## In re AUSTRIAN AND GERMAN BANK HOLOCAUST LITIGATION.

### This Document Relates to All Actions.

### No. 98 Civ. 3938 SWK.

United States District Court, S.D. New York.

Jan. 6, 2000.

*MEMORANDUM OPINION
AND ORDER*

KRAM, District Judge.

In this consolidated class action alleging various torts and violations of international law, plaintiff class representatives Rudolfine Schlinger, Ernestine Schwarz Wasyl, Marian Salomon Elkan, Paul Schwarz, Elisabeth Bishop, Roman Neuberger, Nathan Gutman, Johanna Mason, Bezalel Kahn, Miriam Deutsch, Ludewig Schaffer, Gisela Bertysch and Greta Kleinman [1] and defendants, Bank Austria AG, ("Bank Austria") and Creditanstalt AG, ("Creditanstalt") (collectively, the "Austrian Banks") seek (1) approval of a proposed partial settlement agreement (the "Settlement") between plaintiffs and the Austrian Banks, and (2) dismissal of all claims against the Austrian Banks. Purported class member and *pro se* litigant, Peter Georgi ("Georgi"), also moves, pursuant to Federal Rule of Civil Procedure 24, to intervene. For the reasons set forth below, the Settlement is approved, all claims against the Austrian Banks are dismissed, and Georgi's motion to intervene is denied.

## BACKGROUND

### I. The Action

Beginning in or about October 1998, a number of individual and class actions were filed against the Austrian Banks and certain German banks in the United States District Courts for the Southern and Eastern Districts of New York (the "Actions"). The plaintiffs in the Actions alleged that

---

1. Gisela Bertysch and Greta Kleinman seek approval of the proposed partial settlement agreement save one objection to a proposed distribution of a portion of the settlement funds, which is addressed below in section III(c)(6).

the defendant banks committed various torts and violations of international law arising out of the activities of the Nazis during and after World War II. In December 1998, the Actions were transferred to this Court. By Order dated, February 19, 1999, the Actions were consolidated for all purposes.[2] The February 19, 1999 Order also provided that any actions filed in the future determined to be related to the Actions would also be consolidated unless the parties to the new action objected within 10 days of receiving notice of the consolidation. *See* Order, dated Feb. 19, 1999. On March 17, 1999, plaintiffs filed a consolidated class action complaint (the "Consolidated Complaint") against Deutsche Bank, Dresdner Bank, Commerzbank, Hypo Bank (collectively, the "German Banks") and the Austrian Banks.

The Consolidated Complaint alleges that the Austrian and German banks converted the assets of those persecuted by the Nazis and profited from their forced and slave labor. Consolidated Complaint, *passim.* The Consolidated Complaint defines the class as:

> All persons worldwide, their heirs, executors, administrators, successors, beneficiaries and/or assigns, who do not timely elect to be excluded from the Class who are or were, directly or indirectly (i) Victims or Targets of Nazi Persecution and (ii) during the Class Period January 1, 1933 to (but not including) January 1, 1947:
>
> (A) had moneys, securities or other assets on deposit with any of the Austrian Banks which were converted by any of the Austrian Banks, transferred as a direct or indirect result of Nazi persecution, laws or actions by any of the Austrian Banks to non-owners, including governmental entities, and/or never returned to rightful owners; or
>
> (B) had personal and/or private property looted or through any means converted from them or seized by or through the Nazis or their co-conspirators and transferred to any of the Austrian Banks or by or through any of the Austrian Banks to others; or
>
> (C) sent assets through any of the Austrian Banks destined for concentration camps inmates but that never reached such inmates and/or were not returned or forwarded to the rightful owner or from which any of the Austrian Banks benefitted financially, directly or indirectly; or
>
> (D) were injured, directly or indirectly, by the actions of the Austrian Banks in tortious violation of customary international law, including profiting and/or facilitating the use by others of slave labor, the transfer of gold, precious metals and gems to the Nazi Regime and disguising the true ownership of companies or assets owned by German entities between 1933 and 1947.

Consolidated Complaint ¶ 97.

## II. The Negotiations

On December 16, 1998, the Court appointed Alfonse M. D'Amato as Special Master to supervise and conduct settlement discussions between the parties. Order, dated Dec. 16, 1999. On January 4, 1999, Special Master D'Amato, his colleague, Professor Viet D. Dinh, and representatives of plaintiffs and the Austrian Banks first met to discuss a possible reso-

---

**2.** The Court ordered the following cases consolidated: *Watman et al. v. Deutsche Bank, et al.,* 98 Civ. 3938(SWK); *Mason, et al. v. Deutsche Bank et al.,* 98 Civ. 7793(SWK); *Berytsch, et al. v. Bank Austria, et al.,* 99 Civ. 302(SWK); *Elkan, et al. v. Creditanstalt, et al.,* 99 Civ. 387(SWK); *Duveen et al. v. Deutsche Bank et al.,* 99 Civ. 388(SWK); *Haas v. Deutsche Bank,* 99 Civ. 1065(SWK); *Hammer-* *stein v. Deutsche Bank,* 99 Civ. 1067(SWK); *Haas, et al. v. Bayerische Hypo and Vereinsbank,* 99 Civ. 1586(SWK); *see* Order, dated Feb. 19, 1999, *World Council of Orthodox Jewish Communities, Inc., et al. v. Deutsche Bank AG,* 99 Civ. 10258(SWK); *Simon Bronner v. Dresdner Bank AG,* 99 Civ. 2165(SWK), *see* Order, dated October 25, 1999.

lution of the action. In addition, they met several times over the course of several months and spoke at length by telephone in an attempt to negotiate a settlement.[3] Declaration of Charles G. Moerdler ("Moerdler Dec."), ¶ 6. On March 15, 1999, the Austrian Banks and counsel for the plaintiff class reached the Settlement. *Id.*, ¶ 9.

## III. Preliminary Certification and Notice

On June 24, 1999, the Court granted preliminary certification of the above-defined class for settlement purposes (the "Settlement Class"). Order, dated June 24, 1999. The Court also granted preliminary approval to the Settlement and scheduled a hearing to commence on November 1, 1999 to determine whether the Settlement is fair, reasonable and adequate (the "Fairness Hearing"). *Id.*

On July 28, 1999, the Court approved the proposed form of notice and notice campaign. Order, dated July 28, 1999. The notice contained the following information: (1) the key terms of the settlement (2) how to obtain a claim form; (3) that members of the Settlement Class would be bound by the Settlement if they did not inform class counsel that they wished to opt-out by October 18, 1999; and (4) that members of the Settlement Class were permitted to comment on or object to the Settlement in writing and at the Fairness Hearing so long as written objections were received by the Court post-marked no later than October 18, 1999. *Id.*

Notice was mailed directly to 27,883 current or former Austrian Citizens, in 68 countries, determined to be victims of Nazi persecution by the National Fund of the Republic of Austria for Victims of National Socialism. *See* Declaration of Robert A. Swift ("Swift Dec."), ¶¶ 3–4; Declaration of Edward D. Fagan ("Fagan Dec."), ¶¶ 4–8. The notice campaign also utilized (1) paid advertisements in newspapers in certain countries with significant populations of World War II survivors who were in Austria before and during World War II; (2) promotional announcements in key foreign cities; (3) direct mailings to 15,000 individuals and organizations; (4) and establishment of a worldwide web "home page." Swift Dec., ¶¶ 3–4; Fagan Dec., ¶¶ 4–8.

## IV. The Settlement[4]

### A. The Settlement Fund

Pursuant to the Settlement, the Austrian Banks will pay a total of $40 million for the benefit of the members of the Settlement Class. Of that sum, $38 million will be paid in three installments. The remaining $2 million will be paid by Bank Austria directly to support the work of a historical commission created for, *inter alia*, investigating and publishing a report regarding the activities of the Austrian Banks during the Nazi era and attempting to identify members of the class. Eight million dollars of the first installment has been paid into escrow. The second installment of $15 million will be paid within twenty Austrian business days after the effective date of the Settlement (the "Effective Date").[5]

---

3. During the negotiations period, the Austrian Banks provided plaintiffs' representatives access to much of their records. Moerdler Dec. ¶ 7. Several thousand pages of bank materials in German and English were delivered to New York for review by plaintiffs' representatives. *Id.* Likewise, plaintiffs' representatives traveled to Vienna, Austria to review the Austrian Banks's records. *Id.*

4. All references to terms of the Settlement are drawn from the Settlement Agreement unless otherwise indicated.

5. The Effective Date is defined as:
 the date when the time for appeal or to seek permission to appeal a final order approving this Agreement under Federal Rule of Civil Procedure 23(e) and a Final Order and Judgment dismissing the Action as to the Austrian Banks, individually and collectively, on the merits with prejudice as to all Settlement Class members and without costs other than those provided for in this Agreement has expired or, if appealed, when approval of this Agreement and the final judgment have been affirmed in their

## B. Interim Allowed Claims Fund

"In an effort to expedite the processing of claims by or on behalf of those with allowable claims, the Austrian Banks have initiated, and will continue until the Effective Date, an Interim Allowed Claims Settlement process whereby claims are referred for review and award to The Hon. Theodore R. Kupferman (and/or any other person as may be appointed by the Court upon the recommendation of lead counsel and the Austrian Banks if Justice Kupferman is unable to serve)." Settlement, ¶ 21. All sums awarded by Justice Kupferman and his expenses shall be deducted from any sum due for funding of Administrative and Interim Allowed Claims Fund. *Id.* Any challenge to the reasonableness of awards granted or fees paid shall be made to the Court. The Court may elect to continue the Interim Allowed Claims process in lieu of or in addition to the process described in Section IV(C) below.

## C. Individual Claims Settlement— The Claims Committee

The processing of claims will be supervised by the Claims Committee. The members of the committee will be: (1) Chairman Paul D. Wachter; (2) Senator Guy Vellala; and (3) The Hon. Theodore Kupferman. *See* Order, dated Aug. 4, 1999. The Claims Committee will establish standards to determine (a) which claims shall be allowed; (b) the amount of each allowed claim; and (c) the amount to be paid on each claim. The Claims Committee shall also establish standards for evaluating all claims, taking into consideration the age of the claimants, the nature of the claims, the class members' secondary and anecdotal evidence, and the quality and availability of Austrian Banks' archival material. Furthermore, the Claims Committee will itself make such determinations or will appoint a panel of independent masters to determine the same in

accordance with such standards. Subject to Court approval, the Claims Committee shall have the discretion to pay all or a portion of any claim of any individual who demonstrates an immediate need for funds on an expedited basis. The Claims Committee may elect, by majority vote, to continue the Interim Allowed Claims settlement process. The Claims Committee shall complete its mandate within nine months from the bar date for claims established by the Court, unless the time is extended by the Court.

Individual claims officers ("Claims Officers") shall be appointed by the Individual Claims Committee. The Claims Officers shall process and value each claim, subject to review on appeal by the Individual Claims Committee, which will review the determination of Claims Officers at the request of claimants.

## D. Historical Commission—$2 Million

In order to preserve documentation and information relating to the acts alleged in the complaint and the conduct of the banks during the period covered by the Settlement, to create and maintain a permanent and public archive of these materials, and to identify the class members and unpaid deposited assets, a Historical Commission will be created consisting of three members. The members shall be: (1) Chairman Dr. Heinrich Senfft; (2) Prof. Oliver Rathkolb; and (3) Dr. Theodore Venus. *See* Order, dated Aug. 4, 1999. The Historical Commission shall investigate and publish a report regarding the activities of Austrian Banks during the Nazi era, and attempt to identify class members.

The Historical Commission may expend a sum up to $2 million. On June 7, 1999, the Austrian Banks delivered to the Court an undertaking to bear the reasonable costs incurred by the Historical Commission up to a maximum of $2 million. Sums

entircty by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to

further appeal or review, or the appeal has been dismissed or withdrawn.
Settlement, ¶ 1(k).

expended in researching the history of, and in locating and translating documents pertaining to, the Austrian Banks prior to the Effective Date shall be deemed to have funded the work of the Historical Commission for purposes of the $2 million maximum.

### E. Restitution Fund—$30 million

The Austrian Banks shall fund a Restitution Fund to be paid in installments as follows: (1) $15 million within twenty Austrian business days after the Effective Date; and (2) $15 million within one year of prior payment. After payment of Allowed Claims or any shortfall in the Administrative and Interim Allowed Claim Fund, any moneys remaining in the Restitution fund shall "be distributed for the benefit of Holocaust survivors and/or their memory." Settlement, ¶ 14.

The Restitution Fund shall be administered by three persons: (1) Chairman Simon Wiesenthal; (2) Miriam M. Robinson, Esq.; and (3) Rabbi Gilbert S. Rosenthal (the "Restitution Committee"). *See* Order, dated Aug. 4, 1999. In providing for the expenditure of such funds, the Restitution Committee shall consider the importance of providing for Austria-based activities or related concerns, and give meaningful consideration to the fact that some members of the Settlement Class are not of the Jewish faith.

### F. Succession/Assignment of Austrian Banks' Claims

Any claims for restitution, indemnification or contribution that the Austrian Banks may have or have had arising out of or relating to any acts of the Austrian Banks, including those from January 1, 1938 through December 31, 1946 against any financial institution or commercial enterprise that may have exercised dominion or control over any of the Austrian Banks, shall be assigned to plaintiffs and the Class. Any amounts recovered pursuant to the assignment shall not diminish the amount to be paid by the Austrian banks into the Settlement funds.

The Austrian Banks shall also locate and provide, to the extent permitted by applicable law, access to all documents in their custody and control that refer or relate to any witnesses in their employ who may have knowledge regarding any claims plaintiffs and the Class have asserted or may assert against German banking institutions, including but not limited to information or documents that relate to the exercise of control by German banking institutions over Austrian Banks.

## V. Fairness Hearing

On November 1, 1999, the Court conducted the Fairness Hearing. Plaintiffs and defendants presented evidence to establish the fairness of the Settlement. John Rees ("Rees") testified about his research of the Austrian Banks' records and the Nazis' role in the operation of those banks during the time period relevant to the Settlement. Transcript of Hearing before Hon. Shirley Wohl Kram, November 1, 1999 ("Tr.") at 27–36. Special Master D'Amato attested to the bona fides of the negotiations between counsel for the parties. All members of the Settlement Class were permitted to appear at the Fairness Hearing and state their comments on or objections to the Settlement. Six objectors appeared at the Fairness Hearing either personally or through counsel, and each was permitted ten minutes to speak. *See id.* at 37–64. At the close of the Fairness Hearing, the Court announced that it would reserve judgment on whether to approve the Settlement. *Id.* at 74.

## DISCUSSION

### I. Georgi's Motion For Intervention

█ Under Rule 24(a), the proposed intervenor must "(1) file timely, (2) demonstrate an interest in the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise adequately protect-

ed." *Farmland Dairies v. Commissioner of New York State Dep't of Agric. and Mkts.*, 847 F.2d 1038, 1043 (2d Cir.1988) (*quoting* United States v. New York, 820 F.2d 554, 556 (2d Cir.1987)). Failure to satisfy any one of these requirements is sufficient grounds to deny the application. *United States v. State of New York*, 820 F.2d 554, 556 (2d Cir.1987). Moreover, Rule 24(c) requires a pleading that sets forth the claim or defense be attached to the motion. Fed.R.Civ.P. 24(c).

### 1. Timeliness

■■■ Determination of whether a motion to intervene is timely is within the sound discretion of the trial court. *See Commack Self–Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 99 (E.D.N.Y. 1996). There is no precise definition of timeliness. *Id.* at 100. Rather, the court should consider various factors to determine whether a motion to intervene is timely, including

> (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*See Farmland Dairies v. Commissioner of the New York State Dep't of Agric. and Mkts.*, 847 F.2d at 1043–44; *Commack Self–Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. at 100.

■■ Georgi has not sustained his burden of establishing that his motion is timely. He states in a conclusory manner that the "motion is timely[ ]" but offers no facts to establish this proposition. Indeed, Georgi filed this motion on October 29, 1999, approximately one year after the action was filed, some three months after notice of this action and proposed settlement were sent to the class members and three days before the Fairness Hearing. Georgi does not indicate why he waited until this late date to seek to intervene in this action. Indeed, at the Fairness Hearing Georgi claimed to have "spent ten years on [Holocaust survivors' litigation] . . ." and claimed to be an "an expert [on] the subject matter before the Court." Tr. at 39–40. Therefore, the Court presumes that Georgi had notice of his purported interest in this action for some time before he filed the instant motion.

As to the remaining factors, Georgi seeks to intervene three months after plaintiffs and the Austrian Banks reached a Settlement and submitted it to the Court for final approval. Georgi's submissions reveal that he objects to the Settlement and seeks to ensure that it is not approved by the Court. Georgi also seeks to add parties to the action. Intervention for the purposes of derailing the Settlement and adding defendants to the action at this late stage would cause intolerable delay to elderly claimants who have already endured decades of waiting for the compensation that the Settlement contemplates. The certain prejudice that such delay would cause plaintiffs and class members outweighs any potential prejudice that Georgi may suffer as a result of being prohibited from intervening in this action. Accordingly, the Court finds Georgi's motion to intervene untimely and it is denied.

### II. Settlement Class

The parties have sought and received preliminary certification of the Settlement Class after having reached agreement on the terms of the Settlement. *See* Order, dated June 23, 1994. The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing suit as a class action and allows the Court to postpone formal certification of the class until after settlement negotiations have ended. Use of this device has been expressly approved. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 117 S.Ct. 2231, 2247, 138 L.Ed.2d 689 (1997) ("the 'settlement only' class has become a stock device"); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d

Cir.1982) (expressly permitting settlement only classes).

■ Use of the settlement class device raises certain concerns. The parties have less information on the relative strengths and weaknesses of claims when a settlement is arrived at early in the life of a case. Therefore, members of the settlement class and the Court may be hindered in their ability to determine the fairness of the settlement. *See, e.g.*, Manual for Complex Litig.2d § 30.45 (3d E.1995) ("[A]n early settlement will find the court and class counsel less informed than if substantial discovery had occurred. As a result, the court will find it more difficult to assess the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from the settlement."). Settlement classes may also raise questions about collusion between plaintiffs' and defendants' counsel. *See, e.g.*, *General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Lit.*, 55 F.3d 768, 787 (3d Cir.1995). In addition, where notice of the class action is sent to class members at the same time as notice of the settlement, as was the case here, "class members are presented with what looks a fait accompli" *Mars Steel Corp. v. Continental Illinois Nat'l Bank and Trust Co.*, 834 F.2d 677, 680 (7th Cir.1987). Because of these concerns, when a settlement class is certified after the terms of settlement have been reached, courts require a "clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." *Weinberger v. Kendrick*, 698 F.2d at 73.

On June 23, 1999 the Court granted preliminary certification to the Settlement Class. Order, dated June 23, 1999 at 2–3. The Court determined that in light of the evidence submitted by the parties and Special Master D'Amato's representations regarding the negotiation process, the requirements of Federal Rule of Civil Procedure 23 had been satisfied. *See id.* To date, no facts have been presented to the Court to indicate that the Court's preliminary determination was in error. Indeed, as will be discussed more fully below, based on the evidence presented, the Court is confident that the Settlement is fair, reasonable and adequate and that it is the product of bona fide arm's length negotiations between the parties. Accordingly, the Court finds that final certification of the Settlement Class is proper.

## III. Class Action Settlements

■ It is well settled that the law favors settlements of disputed claims, particularly in the context of complex class actions. *See, e.g.*, *Chatelain v. Prudential–Bache Sec., Inc.*, 805 F.Supp. 209, 212 (S.D.N.Y. 1992). However, a settlement of a class action must be approved by the Court. *See* Fed.R.Civ.P. 23(e). Acting as the protector of the rights that will be bound by the *res judicata* effects of the settlement, the Court must ensure that the proposed settlement is "fair, reasonable and adequate." *Weinberger v. Kendrick*, 698 F.2d at 73; *TBK Partners v. Western Union Corp.*, 675 F.2d 456, 462 (2d Cir.1982). The Court determines this by examining (1) the negotiations which led up to the Settlement, and (2) the substantive terms of the Settlement. *See, e.g.*, *Weinberger v. Kendrick*, 698 F.2d at 73.

### A. Procedural Fairness—The Negotiations

■ Examination of the negotiating process is necessary to ensure that the "compromise be the result of arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d at 73, *see also Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983). If the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of

fairness. *See, e.g., In re Milken and Assoc. Sec. Lit.,* 150 F.R.D. 57, 66 (S.D.N.Y. 1993). Once the Settlement is presumed fair, "[i]t is not for th[e] Court to substitute its judgment as to a proper settlement for that of such competent counsel...." *In re Warner Comm. Sec. Lit.,* 618 F.Supp. 735, 746 (S.D.N.Y.1985).

Counsel for plaintiffs are extremely experienced in class action litigation and are currently involved in similar litigation in other Courts involving Holocaust-related claims. Likewise, both counsel for plaintiffs and defendants attest that all negotiations leading up to the Settlement were conducted at arm's length. Moerdler Dec. ¶ 6; Hearing Tr. at 13. Moreover, Special Master D'Amato confirmed that the negotiation process was bona fide and advocated by "capable counsel all around the table." Hearing Tr. at 22–23. Indeed, Special Master D'Amato observed that at points the negotiations were extremely contentious. *Id.* The Court is also familiar with the negotiations and agrees with Special Master D'Amato's assessment. Furthermore, while no formal discovery was conducted in this case, plaintiffs were afforded several opportunities to extensively review records provided by the Austrian Banks. Accordingly, the Court finds that the Settlement is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class actions. Therefore, the Settlement enjoys a presumption of fairness.

## B. Substantive Scrutiny

The Court's "primary concern is with the substantive terms of the settlement compared to the likely result of a trial." *Malchman v. Davis,* 706 F.2d at 433. The Court must "apprise [itself] of facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should [the] claim[s] be litigated." *Weinberger v. Kendrick,* 698 F.2d at 74. The Court should not go so far as to effectively conduct a trial on the merits, but should make "findings and conclusions

of law whenever the propriety of the settlement is seriously in dispute." *Malchman v. Davis,* 706 F.2d at 433.

### 1. The *Grinnell* Factors

In determining whether a settlement is "fair, reasonable and adequate," courts in this Circuit look to the following factors: (1) the complexity, expense and likely duration of litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974).

### a. Complexity, Expense and Duration of Litigation

This first factor "weighs heavily" in the Court's analysis of the fairness of the Settlement. *See, e.g., Klein v. PDG Remediation, Inc.,* No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999). Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them. *See In re Nasdaq Market-Makers Antitrust Lit.,* 187 F.R.D. 465, 477 (S.D.N.Y.1998) ("[C]lass actions have a well deserved reputation as being most complex."). Settlements of such complex matters are favored by courts. *See, e.g., In re Medical X–Ray,* No. 93 Civ. 5904, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998).

It is beyond cavil that this litigation is complex and would likely endure for years at a significant cost to all parties. Plaintiffs' claims are based on acts and

events that occurred more than fifty years ago in war-time Europe. Despite the work of thirty researchers, only a portion of the Austrian Banks' records relevant to the claims have emerged. Declaration of John Rees ("Rees Dec.") at 3 n. 2. Many of the records were either lost or destroyed during or after the war. *Id.* Litigating this case without these documents and records would undoubtedly add to the complexity of this already difficult case. Moreover, sifting through the existing records and documents as well as moving them to the United States and translating them into English would be an extremely time consuming and arduous task. Many of the plaintiffs and members of the Settlement Class are advanced in age and prolonging this litigation will result in many of them never seeing a resolution of this action or distribution of any recovery. And finally, as will be discussed below, further litigation of this case would present the Court with complex legal issues upon which the Court would be required to rule. Appeals would certainly follow, thus lengthening and increasing the cost of the litigation. Accordingly, the Court finds that this factor weighs in favor of the Settlement.

### b. Reaction of the Class

█ A certain number of objections are to be expected in a class action with an extensive notice campaign and a potentially large number of class members. *See In re Nasdaq Market–Makers Antitrust Lit.*, 187 F.R.D. at 478 ("In litigation involving a large class, it would be extremely unusual not to encounter objections."). If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement. *See id.* at 478–79; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990) (29 objections out of 281 member class "strongly

favors settlement"); *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir.1981) (The fact that 7 out of 109 class members objected to the proposed settlement should be considered when determining fairness of settlement.); *Marisol A. v. Giuliani*, 185 F.R.D. 152, 162 (S.D.N.Y.1999) ("The Court views the small number of comments from a plaintiff class of over 100,000 children as evidence of the Settlement Agreements' fairness, reasonableness and adequacy."); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D.Cal.1979) (The fact that only 16% of the class objected was deemed "persuasive" of the adequacy of the settlement.).

█ The notice campaign in this case was extensive. Notice was mailed directly to 27,883 current or former Austrian Citizens, in 68 countries, determined to be victims of Nazi persecution by the National Fund of the Republic of Austria for Victims of National Socialism. Additionally, the notice campaign utilized (1) paid advertisements in newspapers in certain countries with significant populations of World War II survivors who were in Austria before and during World War II; (2) promotional announcements in key foreign cities; (3) direct mailings to 15,000 individuals and organizations; (4) and establishment of a worldwide web "home page." The notice informed class members how to request exclusion from the Settlement if they wished to do so. Likewise, class members were informed of the Fairness Hearing date and their right to object to or comment on the Settlement at that time.

To date, 72 persons have requested exclusion from the Settlement.[6] The Court has received a total of 18 objections to and/or comments on the Settlement, which are addressed more fully below.[7] Each

---

6. The Court notes that this number may in fact be inflated because a number of those requesting exclusion have indicated that they believe that they are not members of the Settlement Class. *See* Pl.'s Memo. In Supp. of

Settlement at 15; Def.s' Memo. In Supp. of Settlement at 68–69.

7. Initially, the Court received 19 objections to and/or comments on the Settlement from the

objector and/or commentor was given the opportunity to speak at the hearing. Six of the 18 objectors appeared at the hearing and stated their objections orally.

By contrast, over 11,000 requests for claims forms have been received and the web-page has received over 10,000 "hits.". Pl.'s Memo. of Law in Supp. of Settlement at 16. Based on their research, counsel has estimated that approximately 1,000 valid claims exist. Pl.'s Memo. of Law in Supp. of Settlement at 25. The Court finds that the relatively low number of objections, in light of the extensive notice and the class size, weighs in favor of the Settlement.

### c. The Stage of the Proceedings and Amount of Discovery Completed

 To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery. *Plummer v. Chemical Bank,* 668 F.2d 654 (2d Cir.1982). Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to "intelligently make ... an appraisal" of the Settlement. *Id.; see also Klein v. PDG Remediation, Inc.,* No. 95 Civ. 4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999). Additionally, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y.1998).

 While no formal discovery has been conducted in this case, the parties have engaged in extensive informal discovery. Voluminous amounts of archived documents have been reviewed by plaintiffs and three depositions were conducted. The archived material shared with plaintiffs' counsel numbered in the thousands of pages. A team of researchers was retained by the Austrian Banks to find and review relevant documents. Rees Dec. ¶¶ 4–5. Plaintiffs' counsel and their researchers spent several days reviewing the documents on several occasions in Vienna and New York. Moerdler Dec. ¶ 7. Counsel and their researchers were also able to review copies of the archived material for extended periods in New York. *Id.* The research team employed by the Austrian Banks sifted through the archived materials looking for documents that would evidence the wartime activities of Creditanstalt and Landerbank. Rees Dec. at ¶ 4.

With regard to the three depositions, two were of plaintiffs' class members, Ernestine Schwarz Wasyl and Gertrude Cole. The third was of a Bank Austria employee. Moerdler Dec. at ¶ 8. The employee was personally involved in processing the claims of victims of Nazi persecution as part of the restitution process ·begun by the Republic of Austria in the 1960's. *Id.* The two class members' depositions recounted many of the horrible injustices the persecuted were forced to endure during the War period, while the Bank Austria employee testified as to the restitution legislation enacted during the 1950's and 1960's by Austria and the lack of any significant accounts belonging to victims remaining at the Austrian Banks. *Id.*

Thus, while discovery in this case was not formal, the information exchanged was extensive. While cooperative, the relationship between counsel for plaintiffs and the Austrian Banks was by no means collusive. *See, e.g., supra,* § III(A). Therefore, the

---

following individuals and groups: 1. Hungarian Jewish Organization; 2. Ukranian Union of Nazi Victims and Prisoners and Organization of Ukranian Antifacist Resistence Fighters; 3. Kurt Schindler; 4. Gisela Berytsch and Greta Kleinman; 5. Anton P. Speilmann; 6. E. Randol Schoenberg; 7. Steven Heinz and Thomas Anninger; 8. Kurt Ladner; 9. Julian Sauer; 10. Eric C. Bettelheim; 11. Henry Wegner; 12. Robert Frankford; 13. Charles Millett; 14. Gabriel Lansky 15. Franziska Kenney; 16. Peter Georgi; 17. Tordai Peter and Zoltai Gustav; 18. Israel Schajewitz; and 19. Maria Kluge. The Court has been informed that Maria Kluge has withdrawn her objection in its entirety.

Court finds that this factor weighs in favor of approving the Settlement.

#### d. Risk of Establishing Liability

It goes without saying that the events which form the backdrop of this case make up one of the darkest periods of man's modern history. Those persecuted by the Nazis were the victims of unspeakable acts of inhumanity. At the same time, however, it must be understood that the law is a tool of limited capacity. Not every wrong, even the worst, is cognizable as a legal claim. Indeed, a number of obstacles stand in the path of plaintiffs' claims in this case.

■■■ Defendants point to a number of factual difficulties that plaintiffs would encounter in litigating their claims. *See* Def.'s Memo. of Law at 74–76. For example, defendants point out that Bank Austria and Creditanstalt were not entities in existence during the years of 1938–45, the relevant period for the claims asserted by plaintiffs. *See* Def.'s Memo. of Law at 71. Likewise, defendants, in their Memorandum of Law, summarize a number of legal defenses to which plaintiffs' claims would be subject. *Id.* at 72–76. Those defenses include: 1. the doctrines of political question and act of state; 2. forum non conveniens; 3. statute of limitations; 4. international comity; 5. successor corporate liability; 6. failure to join indispensable parties; 7. inadequately particularized pleading; and 8. restitution. *Id.* The statute of limitations, political question, and restitution defenses are extensively detailed in the declarations of Drs. August Reinisch, Gerhard Hafner and Paul Oberhammer. *See* Joint Declaration of Drs. August Reinisch and Gerhard Hafner, *passim;* Declaration of Dr. Paul Oberhammer, *passim.* While plaintiffs do not take the position that these factual difficulties or defenses are terminal to plaintiffs' claims, they do recognize that they pose a substantial risk of nonrecovery. *See* Pl.'s Memo. of Law at 17.[8]

■■■ The Court is not in a position to foresee with absolute certainty the outcome of the case. Fortunately, the Court need not make such a prediction. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981) (courts need not "decide the merits of the case or resolve unsettled legal questions."). Instead, the Court must only "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Marisol v. Giuliani,* 185 F.R.D. at 164 (S.D.N.Y.1999).

The Court has carefully reviewed plaintiffs' claims in light of the defenses discussed by the Austrian Banks. The Court is impressed by the factual difficulties and legal defenses that plaintiffs face in further litigation of their claim. Each of the defenses outlined by the defendants appear to have merit. Defendants need only succeed on one of the defenses to defeat plaintiffs' claims. Given these obstacles, the Court finds the risks of establishing liability are significant, and that they are outweighed by the Settlement's benefit of awarding plaintiffs a certain recovery of $40 million.

#### e. Damages

Assuming plaintiffs succeed in establishing liability, they would still be required to prove damages. Unlike the claims process anticipated by the Settlement, proof of damages at trial would be required to conform to the Federal Rules of Evidence and the finder of fact would be instructed that damages must meet a certain minimum burden of proof before they can be found. As noted above, the events underlying plaintiffs' claims occurred over fifty years

---

**8.** As further evidence of the uncertainty of the outcome of this case, plaintiffs point to four forced and slave labor actions recently dismissed in the District of New Jersey. *See* Pl.'s Memo. of Law at 21 n. 9. While the Court makes no determination as to whether those decisions were correct or whether the cases are factually similar, at the very least, the dismissals are circumstantial evidence of the uncertainty of this type of litigation.

ago. Much of the documentary proof in this case has been lost or destroyed. Many witnesses are no longer living or are elderly. Therefore, plaintiffs' would face serious difficulty in establishing damages at a trial. The Individual Claims Settlement process, however, will not exact such demanding standards of proof. Accordingly, this factor weighs in favor of the Settlement.

### f. The Risks of Maintaining the Class Action through Trial

Although the Court has granted final certification to the Settlement Class, it is not certain whether the class would remain certified for trial. However, neither plaintiffs nor the Austrian Banks have offered any evidence to show that there is a risk of the class being decertified before or during trial. Thus, the Court finds this factor to be neutral.

### g. The Ability of Defendants to Withstand a Greater Judgment

 Neither plaintiffs nor the Austrian Banks offer any evidence which would indicate that the Austrian Banks could not sustain a greater judgment were plaintiffs to succeed at trial. Therefore, the Court assumes that the Austrian Banks would be able to withstand a greater judgment. Accordingly, this factor weighs against the Settlement.[9]

### h. The Range of Reasonableness of the Settlement in Light of the Best Recovery and Risks of Litigation

The Court must address the value of the Settlement in relation to the range of possible recovery and the risks of further litigation. Determining whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y.1993). "[T]he weighing of a claim against compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the values in issue would defeat the purpose of compromising the claim. . . ." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y.1993). The adequacy of the amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Med. X–Ray*, No. 93 Civ. 5904, 1998 WL 661515 at *5 (E.D.N.Y. Aug. 7, 1998).

The Court cannot with any real certainty estimate the best possible recovery for plaintiffs should they succeed at trial. However, given the amount and nature of the proof available to plaintiffs, establishing their damages would be a tremendously difficult task to say the least. *See supra*, § III(B)(1)(e). Moreover, litigation through trial and appeal of this case would be lengthy and expensive, *see supra*, § III(B)(1)(a), and, plaintiffs' case is susceptible to a number of valid defenses, *see supra*, § III(B)(1)(d) and (e). On the other hand, if approved, plaintiffs and the Settlement Class are assured recovery of $40 million, less expenses, by the terms of the Settlement, and an assignment of all claims the Austrian Banks may have as a result of the Nazis' activities. Given these facts, the Court finds that the Settlement falls well within the range of reasonableness. Thus, these factors weigh in favor of approval of the Settlement.

### C. Objections

As noted, the Court received 18 written comments/objections.[10] The objections are addressed below.

---

**9.** However, defendants' ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair. *See In re Painewebber Ltd. Partnerships Lit.*, 171 F.R.D. 104, 129 (S.D.N.Y.1997) ("[T]he fact that a defendant is able to pay more that it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate.").

**10.** Of the eighteen objections received, five do not contain allegations, let alone proof, that would allow the Court to conclude that the objectors are members of the Settlement

### 1. The Amount of the Settlement Fund

By far, the most common objection to the Settlement concerns the total amount of the settlement fund. Fifteen out of the eighteen objections assert in some way or another that $40 million is inadequate. However, it is unlikely that any sum of money, no matter how large, could ever be thought of as righting the wrongs committed during the Holocaust. Moreover, the Settlement does not purport to compensate all victims of Nazi persecution, only those with the required nexus to the Austrian Banks. Finally, the $40 million sum cannot be evaluated in a vacuum. Plaintiffs face a substantial risk of recovering nothing should the case be litigated through trial. At the very least, the further litigation would drag on for years at a substantial cost to all parties. Therefore, while $40 million may not represent the total of plaintiffs' and the Settlement Class members' damages, that is the nature of settlement; in exchange for accepting less than full compensation, plaintiffs and the Settlement Class are at least assured partial recovery immediately.

The Settlement also provides benefits in addition to the $40 million. The Settlement provides that any claims for restitution, indemnification or contribution that the Austrian Banks may have or have had arising out of or relating to any acts of the Austrian Banks, including those from January 1, 1938 through December 31, 1946 against any financial institution or commercial enterprise that may have exercised dominion or control over any of the Austrian Banks, shall be assigned to plaintiffs and the Settlement Class. Settlement, ¶ 29. The Austrian Banks have agreed to give plaintiffs and the Settlement Class access to their archival records in order to substantiate the assigned claims. Thus, while the Court understands the objections of some members of the Settlement Class as to the amount of the Settlement, they do not convince the Court that the Settlement is unfair, unreasonable or inadequate.

### 2. Notice

A few objections have been raised with regard to the class notice campaign. However, the Court has previously evaluated and approved the proposed notice campaign. *See* Order, dated July 28, 1999. The Court has also received evidence that the notice campaign was executed in the manner approved by the Court. *See* Fagan Dec. *passim;* Swift Dec. *passim.* Moreover, the number of responses received to the notice and the requests for claims forms belies any allegation that notice in this case was somehow deficient.

### 3. Attorneys' Fees

Some objectors claim that attorneys' fees to be paid out of the Settlement Fund are excessive. However, to date, no request for attorneys' fees has been made. Furthermore, any such request will have to be approved by the Court. All can rest assured that the Court will award only reasonable attorneys' fees and expenses as

---

Class as is expressly required by the Court's Order dated, July 28, 1999. Those objections are from: (1) Hungarian Jewish Organization and Ukrainian Union of Nazi Victims and Prisoners; and (2) Organization of Ukranian Antifacist Resistence Fighters; (3) Henry Wegner; (4) Eric Randol Schoenberg; and (5) Nikolay Dobrev. Similarly, the Conference on Jewish Material Claims Against Germany (the "Claims Conference") purported to assert a protective objection at the Fairness Hearing which, in essence, adopted all objectors objections. *See* Hearing Tr. at 70–72. Not only was the Claims Conference's pur-

ported objection untimely, but like the five objections discussed above, there is no allegation that the Claims Conference is a member of the Settlement Class. While the Court has the discretion to refuse to consider these objections for failure to comply with its Order, all objections are considered. However, by doing so, the Court has not determined that the purported objectors have standing with regard to this action or that they are parties in interest. Indeed, from the facts before the Court, these five objectors do not appear to have standing.

required by the law of this jurisdiction. *See, e.g., In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 222 (2d Cir.), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987).

### 4. Claims Distribution

One objector asserts that it is unclear how the $40 million will be distributed. Quite to the contrary, the Settlement is very clear with regard to the distribution of the $40 Million. First, all allowed claims and administrative expenses will be paid. Next, any remaining funds will be distributed by the Restitution Committee on behalf of Holocaust victims and their memory. While which claimants will be paid or how much they will be paid is not stated in the Settlement, that task will be the work of the Claims Committee. Thus, the Court finds this objection to be without merit.

### 5. No Admission of Wrongdoing

Several objections assert that it is unseemly for the Austrian Banks to refuse to admit wrongdoing. The Court understands why some might object to this refusal on the Austrian Banks' part. However, it is not an uncommon feature of civil settlements and it is not barred by law or public policy. Thus, while the Court is sensitive to this objection, the Court finds that it is not enough to warrant a finding that the Settlement is unfair, unreasonable or inadequate.

### 6. Holocaust Museum Distribution

Plaintiffs Gisela Bertysch and Greta Kleinman object to that portion of the Settlement which provides for a $2 million distribution to the United States Holocaust Memorial Museum (the "Holocaust Museum") for archiving records. Notice of Objection of Plaintiffs Bertysch and Kleinman at 1. They argue that these funds should be paid to members of the Settlement Class. *Id.* at 2–6. Neither counsel for defendants nor plaintiffs have responded to this objection.

Paragraph 15(b) of the Settlement provides that "[t]he Court, upon recommendation of the Special Master, shall, within 30 days of the Effective Date, direct when and under what circumstances the [$2 million shall be distributed to the Holocaust Museum]." Settlement, ¶ 15(b). Thus, the Court can and will ensure that all claims deemed valid by the Claims Committee be satisfied before any distribution of funds is made to the Holocaust Museum.

### 7. Other Objections

The Court has carefully considered all other objections to the Settlement. Upon careful review, the Court finds that no objection raised warrants a finding that the Settlement is unfair, unreasonable or inadequate.

### D. The Balance of the *Grinnell* Factors

█ Because the Settlement is the product of bona fide, arm's length negotiations performed by skilled counsel, and overseen by Special Master D'Amato and his colleague Professor Dinh, it enjoys a presumption that it is fair. Inspection of the Settlement with regard to the *Grinnell* factors reveals that the balance of those factors decidedly tip in favor of the Settlement. No objection leads the Court to conclude that the Settlement is unfair, unreasonable or inadequate. Accordingly, the Court finds that the Settlement is fair, reasonable and adequate and it is approved in its entirety.

### CONCLUSION

For the reasons set forth above, Georgi's motion to intervene is denied. The Settlement Class is certified, the Settlement Agreement is approved, and all claims against the Austrian Banks are dismissed with prejudice as against plaintiffs and those members of the Settlement

Class who have not timely exercised their right to be excluded from the Settlement.

SO ORDERED.