# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

### NO. 03-10-00648-CV

**Assignees of Best Buy, OfficeMax, and CompUSA, Appellants[1]**

**v.**

**Susan Combs, State of Texas Comptroller of Public Accounts, and
Greg Abbott, Attorney General of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. D-1-GN-10-001182, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

We withdraw the opinion and judgment dated July 20, 2012, and substitute the

following opinion and judgment in their place. We deny the Assignees' motion for rehearing.

---

[1] We will refer to the appellants in this case as the "Assignees." As we will explain, they are the individual settlement-class members (except for the named plaintiffs who were appointed the settlement-class representatives) of settlement classes approved in class actions in which they obtained assignments to pursue certain retailers' rights for Texas sales-tax refunds. When the appellants filed their original notice of appeal, they appealed on behalf of all plaintiffs in the case below, and the case was styled as Tara Levy, Robert Tycast, Vivian Faywood, John Butler, Rockey Piazza, Linda Piazza, and Paul Denucci, et al. v. Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas. They later filed an amended notice of appeal to indicate that the appeal was filed on behalf of all plaintiffs other than Tara Levy, Robert Tycast, Vivian Faywood, John Butler, Rockey Piazza, Linda Piazza, and Paul Denucci, the settlement-class representatives. The appellants have requested that they be designated as the "Assignees of Best Buy, OfficeMax, and CompUSA" because the trial court's dismissal order does not apply to the settlement-class representatives. We have amended the style of the case to correctly reflect the parties to this appeal.

This appeal of the trial court's order granting the appellees' plea to the jurisdiction arises from the Assignees' settlement of two other lawsuits, which were filed as class actions. In those lawsuits (the "Retailer Suits"), the named plaintiffs sought a refund of Texas sales taxes that they and the putative-class members allegedly overpaid on items purchased from certain Best Buy, OfficeMax, and/or CompUSA stores (collectively, the "Retailers") under mail-in rebate promotions. The named plaintiffs in the Retailer Suits contended that the Retailers had failed to refund sales tax to them on the rebated amounts. The Retailers and the putative classes tentatively settled the cases by agreeing that the Retailers would assign their refund claims to the putative-class members to allow the individual class members to pursue their assigned refund claims from the Comptroller.[2]

In the orders preliminarily approving settlement ("settlement orders"), the trial courts approved the classes for settlement purposes only and appointed settlement-class counsel to represent the settlement-class members in the Retailer Suits *and* in the presentation of the individuals' claims to the Comptroller.[3] The orders provided that settlement-class counsel was "given full power of attorney to represent such Settlement Class Members in their individual claims against the Comptroller." The settlement-class members, through settlement-class counsel, filed their assigned claims for refunds with the Comptroller as three aggregated claims, one for each Retailer. *See* Tex. Tax Code Ann. § 111.104 (West 2008) (establishing procedure for filing

---

[2] The appellees in this case are Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas. We refer to them collectively as the "Comptroller."

[3] We will refer to the portions of the settlement orders that appointed settlement-class counsel to represent the settlement-class members in the presentation of the individuals' refund claims to the Comptroller as the "appointment orders."

2

tax-refund claims).[4] Settlement-class counsel requested that the bulk payments be made payable to the settlement classes for distribution after notice to the class and final approval of the settlements by the trial courts. The Comptroller's staff initially denied the claims, and after a contested-case hearing before an administrative law judge (ALJ), the ALJ recommended that the refund denial be upheld. The Comptroller issued a ruling denying the refund claims.

The Assignees (and the settlement-class representatives) then filed this suit under tax code section 112.151, asserting that the Comptroller erred by (1) denying them authority to file their refund claims, (2) failing to toll limitations for Assignees whose claims arose within four years before the Assignees filed their original lawsuit against the Retailers, and (3) rejecting the Assignees' documentation of their refund claims. *See id.* § 112.151 (West Supp. 2011) (allowing suit for tax refund after denial of claim). The Comptroller filed a plea to the jurisdiction, asserting that the Assignees did not properly exhaust their administrative remedies because settlement-class counsel lacked authority to file a refund claim on behalf of the individual settlement-class members. The trial court granted the plea to the jurisdiction, dismissing the Assignees' lawsuit.

The Assignees appeal the dismissal order, arguing that the trial court improperly sustained the Comptroller's plea to the jurisdiction, which they contend is an improper collateral attack on the orders in the Retailer Suits granting preliminary approval to those suits' settlement. The Assignees contend that the trial courts had jurisdiction to include pursuit of the *individual* class members' administrative claims before the Comptroller in the scope of *class* counsel's duties in the Retailer Suits. We will affirm the dismissal of the Assignees' lawsuit against the Comptroller.

---

[4] We cite to the current versions of the statutes and administrative code for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

## BACKGROUND

**The Retailer Suits**

Some additional detail about the factual and procedural background of the Retailer Suits and this lawsuit is necessary to provide context for our decision. In our decision in *Levy v. OfficeMax, Inc.*, 228 S.W.3d 846, 848-49 (Tex. App.—Austin 2007, no pet.), we provided a brief history of the Retailer Suits up to the time of that appeal. For our purposes in this appeal, we need only explain that although the Comptroller had been joined in one of the Retailer Suits (the one against Best Buy and OfficeMax), she filed a plea to the jurisdiction in that suit, which was granted. *Id.* at 848. The plaintiffs did not appeal that order. *Id.* The order appealed in *Levy* was a final order dismissing all of the plaintiffs' claims except for the putative-class representatives' individual claims for injunctive relief to compel assignments from the Retailers of the Retailers' refund claims against the Comptroller and for damages beyond the amount of any tax refund. *Id.* The plaintiffs appealed only the trial court's dismissal of the class claim seeking to compel an assignment of the Retailers' rights to file a refund claim with the Comptroller. *Id.* at 849.

As part of our decision, we explained that section 111.104(b) of the tax code precludes consumers from filing a refund claim with the Comptroller because they did not pay the tax "directly" to the state, but that they could file a refund claim with the Comptroller after procuring an assignment from the Retailers. *Id.* at 850 (construing section 111.104(b), which allows person who "directly" paid tax to state, that person's attorney, assignee, or other successor to file refund claim); *see also* Tex. Tax Code Ann. § 111.104(b). We concluded that the district court had jurisdiction to consider the plaintiffs' claims against the Retailers to compel an assignment of

4

the Retailers' refund rights and to consider whether a class should be certified. *Levy*, 228 S.W.3d at 852. We did not opine on whether the tax code allows a class action for refund claims. *See id.* at 851 (noting that neither tax code nor Comptroller's regulations contain express language allowing class actions for refund claims). Without opining on the merits of the plaintiffs' claims for assignments from the Retailers, we remanded the case to the district court for consideration of the plaintiffs' claims and motion to certify a class. *Id.* at 851 n.2, 852.

After we issued our decision in *Levy*, the plaintiffs settled with the Retailers. As explained above, the terms of the settlement agreements required the Retailers to assign their rights to assert refund claims to the class members. The trial courts granted preliminary approval of the proposed Retailer settlements and certified classes only for settlement purposes. All three orders define the class similarly, as consisting of those persons or entities who were Texas residents that redeemed mail-in rebates for a taxable purchase made during a certain date range at one of the Retailers' Texas stores (and for CompUSA and Best Buy, via Internet or telephone order and shipped to a Texas address).

Only the CompUSA settlement order contains any analysis of the class-certification requirements of Texas Rule of Civil Procedure 42(a). The trial court found that the numerosity requirement was satisfied because there were over 200,000 potential class members, that the proposed class representatives' claims were typical of the other potential class members' claims, and that proposed class counsel and the proposed class representatives would adequately represent the class. *See* Tex. R. Civ. P. 42(a). The trial court also found that the commonality requirement was met because all potential class members made purchases subject to sales tax and all mailed in

5

applications for retailer rebates. In addition, the trial court found that two questions of law were common to all potential class members: (1) whether sales tax is ultimately due to the Comptroller on amounts that retailers refund to customers via rebates and (2) if sales tax is not due on amounts that retailers refund to customers via rebates, whether an injunction should be issued requiring the Retailers to refund sales tax to customers who had redeemed Retailer rebates.[5]

The CompUSA order also contains the only analysis of why the trial court found that the class should be certified as a mandatory class as provided in Texas Rule of Civil Procedure 42(b)(2). The trial court found that the declaratory relief sought predominated over any monetary relief, which was incidental to the declaratory judgment that sales tax is not due on retailer rebates and the injunctive relief requiring assignments. *See* Tex. R. Civ. P. 42(b)(2) (allowing class action to be maintained on ground that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"). All three orders noted that notice to the class would not be required until settlement-class counsel sought final approval of the settlement and disbursement of any recovery "on behalf of the Settlement Class" because the settlement class was being conditionally certified for settlement purposes as a mandatory class under Rule 42(b)(2). *Compare* Tex. R. Civ. P. 42(c)(2)(A) (allowing court to direct appropriate notice to class for class certified under Rule 42(b)(1) or (2)) *with* Tex. R. Civ. P. 42(c)(2)(B) (requiring court to direct notice and opt-out opportunity to class members at time of class certification for classes certified under Rule 42(b)(3)).

---

[5] The order stated that the common issue of whether sales tax is due on amounts refunded to customers via retailer rebates had already been decided on summary judgment.

6

As previously mentioned, when the trial courts granted preliminary approval of the settlements, in addition to appointing Perlmutter & Schuelke, LLP as settlement-class counsel in the class cases, they also granted the firm power of attorney to represent the settlement-class members in the presentation of their *individual* claims to the Comptroller. The trial courts ordered that Perlmutter & Schuelke was appointed:

> to represent the Settlement Class Members in the presentation of their individual claims for refunds to the Comptroller and to pursue any and all necessary administrative appeals and proceedings in all courts. Perlmutter & Schuelke, L.L.P. is hereby given full power of attorney to represent such Settlement Class Members in their individual claims against the Comptroller . . . .

The terms of the settlement agreements required settlement-class counsel to diligently seek full tax refunds for all of the settlement-class members in proceedings before the Comptroller and any subsequent available appeals. The settlement agreements also all contemplated that settlement-class counsel would seek a percentage of the total refunds recovered from the Comptroller for attorney's fees and expenses when seeking final approval of the settlement at the conclusion of the administrative process.

**Administrative proceedings before the Comptroller**

Perlmutter & Schuelke filed three written claims with the Comptroller on behalf of the individual settlement-class members, explaining that their "clients ha[d] been assigned the single claim" of each of the Retailers for sales tax paid on purchases for which a cash discount was offered through a retailer rebate. With each of the three claims, settlement-class counsel submitted a spreadsheet containing each Assignee's name, purchase date, and rebate amount, which had

7

been compiled from information provided to settlement-class counsel by the Retailers. They sought refunds totaling $1,276,312.55 for the CompUSA Assignees; $11,054,086.76 for the Best Buy Assignees; and $1,999,768.83 for the OfficeMax Assignees. Settlement-class counsel requested that the checks for the bulk payments be made payable to the settlement classes for distribution after final approval of the settlements by the trial courts.

As mentioned earlier, the Comptroller's staff denied the refund claim. The staff based its denial primarily on the grounds that the settlement classes lacked standing to file the refund claims for the individual class members. After a contested-case hearing, the ALJ recommended that the refund denial be upheld. The Comptroller also denied the refund claims. When the Comptroller issued her ruling, she made some changes to the proposal for decision to reflect her determination that the ALJ improperly concluded that our ruling in *Levy* allowed class-action refunds.[6] In each of her decisions, the Comptroller found that the settlement class had filed a refund claim on behalf of the members of the class. She concluded, however, that (1) the tax code does not authorize a class to file a refund with the Comptroller, (2) the tax code does not give the Comptroller the statutory authority to grant a class-action refund, (3) the settlement class was required to submit the supporting documentation required by the Comptroller for verification of the refund claim, and (4) the statute of limitations expired for claims arising from tax that was due and payable more than four years before the refund claim was filed on April 16, 2008. Accordingly, she denied the refund claims.

---

[6] As noted above, in *Levy*, we did not opine on whether the tax code allows a class action for refund claims. *Levy v. OfficeMax, Inc.*, 228 S.W.3d 846, 851 (Tex. App.—Austin 2007, no pet.). In this appeal, the Assignees have conceded that "the Tax Code does not allow administrative class refund claims," so again we do not opine upon this issue.

The Assignees filed motions for rehearing, asserting that the Comptroller erred by (1) denying them authority to file their refund claims, (2) failing to toll limitations for Assignees whose claims arose within four years before the Assignees filed their original lawsuit against the Retailers, and (3) rejecting Assignees' documentation of their refund claims. The Comptroller denied these motions.

**This lawsuit**

After the denial of the motions for rehearing, the settlement-class representatives, along with the other Assignees, "including but not limited to those whose names appear on the compact disks attached" to the petition, sued the Comptroller. The petition sought "aggregate refunds for assignees of each of the retailers" in the following amounts: $1,604,367.17 for the CompUSA Assignees; $11,017,104.44 for the Best Buy Assignees; and $1,999,730.71 for the OfficeMax Assignees. The Assignees incorporated their motion for rehearing and its attached exhibits, their claim submissions to the Comptroller, into their petition.

The Comptroller filed a plea to the jurisdiction, asserting that the Assignees had not properly exhausted their administrative remedies because settlement-class counsel lacked authority to file an individual refund on behalf of each individual putative-class member. *See* Tex. Gov't Code Ann. § 311.034 (West Supp. 2011) (establishing that statutory prerequisites to suit are jurisdictional requirements in suits against governmental entities); *see also* Tex. Tax Code Ann. § 111.104(d) (establishing that failure to file timely refund claim waives any demand against State for alleged overpayment). The Comptroller contended that the trial courts in the Retailer Suits did not have jurisdiction to appoint settlement-class counsel to be the individual counsel for hundreds of thousands

9

of absent class members for the purpose of initiating separate administrative proceedings against the Comptroller, who was not a party to the orders preliminarily approving the class settlements. The Comptroller collaterally attacked the trial courts' appointment orders as void, contending that the trial courts lacked jurisdiction to enter those particular orders (to enter orders appointing class counsel to individually represent the settlement-class members in another lawsuit) and jurisdiction of the subject matter (because there was no justiciable controversy between the Retailers and the class concerning representation of the individuals in the administrative proceeding). *See Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881-82 (Tex. 1973) (identifying four circumstances in which court's judgment is void and subject to collateral attack). The Comptroller also contended that the appointment orders are void because they constitute fundamental error that directly and adversely affects the public interest as declared in the statutes or constitution of Texas. *See Wagner v. D'Lorm*, 315 S.W.3d 188, 192 (Tex. App.—Austin 2010, no pet.). The Comptroller argued that in this case the appointment orders constitute fundamental error because they would circumvent the procedural safeguards of Texas Rule of Civil Procedure 42, prevent her from implementing the warrant-hold statutes, potentially harm absent class members, and violate the tax code. For all these reasons, the Comptroller argued, the appointment orders are void and settlement-class counsel could not be considered the individual Assignees' "attorney" within the meaning of section 111.104 of the tax code and could not exhaust administrative remedies on those individuals' behalf. Consequently, the Comptroller asserted, the Assignees have failed to comply with the statutory requirements to waive sovereign immunity for tax-refund suits.

The Assignees responded that the trial courts had jurisdiction to define the scope of class counsel's duties on behalf of the class and that the Retailers and the class were adverse until

10

the settlement was final, so the controversy was a justiciable one. The Assignees also argued that the appointment orders did not constitute fundamental error because the trial courts appropriately certified the classes for settlement purposes as Rule 42(b)(2) classes, which allowed the trial courts to postpone notice to the class and the ability to opt out until the parties seek final approval of the settlement. The Assignees further asserted that the ability to opt out at the time of final settlement approval adequately protects the absent class members' rights and that the Comptroller would be able to implement the warrant-hold statutes because she had the class members' names. They contended that because this Court had determined in *Levy* that the trial courts had jurisdiction to consider the Assignees' claims against the Retailers to compel an assignment of refund rights and to consider class certification, the appointment orders did not violate the tax code's lack of authorization of a class-action proceeding for refund claims. *See Levy*, 228 S.W.3d at 851-52. The Assignees also contended that the appointment orders were merely voidable, not void, and thus, the Comptroller should have given them effect throughout the administrative process.

The trial court granted the Comptroller's plea to the jurisdiction. The Assignees then perfected this appeal.

**STANDARD OF REVIEW**

Sovereign immunity from suit defeats a trial court's jurisdiction and therefore is properly asserted in a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Id.* at 226.

11

Some pleas to the jurisdiction may be determined solely from the pleadings. *Id.* In other cases, such as this one, we must consider evidence challenging the existence of jurisdictional facts to resolve the jurisdictional issues raised. *See id.* at 226-27. In these cases, the applicable standard of appellate review depends on whether the jurisdictional facts implicate the merits of the plaintiff's case and whether the evidence is disputed. *University of Tex. v. Poindexter*, 306 S.W.3d 798, 806-08 (Tex. App.—Austin 2009, no pet.). When the jurisdictional issue does not implicate the merits of the case and the jurisdictional facts are undisputed, the trial court should make the jurisdictional determination as a matter of law based solely on the undisputed facts. *Id.* at 806.

The Comptroller's plea to the jurisdiction challenged the existence of the jurisdictional facts alleged by the Assignees—specifically, whether the Assignees had exhausted their administrative remedies through settlement-class counsel's filing of their aggregated refund claims with the Comptroller. The jurisdictional issue—whether the trial courts had jurisdiction to appoint settlement-class counsel to represent the Assignees in their individual proceedings before the Comptroller—does not implicate the merits of the Assignees' case (i.e., whether they are owed tax refunds on the rebated portions of their purchases). *See id.* at 807-08. In this case, the relevant jurisdictional facts are undisputed. Thus, the trial court was required to resolve the jurisdictional issue on the basis of those undisputed facts. *Id.* at 808. Accordingly, whether the Assignees exhausted their administrative remedies is a question of law we review de novo. *See id.* at 807-08.

## DISCUSSION

In her plea to the jurisdiction, the Comptroller collaterally attacked the trial courts' orders as void. As a result, we must decide whether the trial courts in the Retailer Suits had jurisdiction

12

to enter the orders appointing settlement-class counsel to represent the class members in an individual capacity in separate, non-class-action refund proceedings before the Comptroller. If they did not, then those appointment orders are void, settlement-class counsel had no authority to file the individual Assignees' refund claims, the Assignees in effect never appeared before the Comptroller, and the trial court in this case correctly granted the Comptroller's plea to the jurisdiction.

A collateral attack seeks to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating that judgment. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). The collateral attack is brought by a party seeking some specific relief that the judgment currently bars; in this case, the Comptroller seeks to avoid payment of aggregated refunds to the Assignees based on the claims filed by settlement-class counsel. *See id.* Because the collateral attack by definition is not a direct attack and can arise in a variety of contexts, no set procedure exists for collaterally attacking a judgment.[7] *See Texas Dep't of Transp. v. T. Brown*

---

[7] The Assignees contend that the Comptroller does not have standing to challenge the appointment orders because she was not a party to the Retailer Suits when the courts issued the orders. The Comptroller is not bringing a direct attack; she need not have been a party to the Retailer Suits to bring a collateral attack. *See Grynberg v. Christiansen*, 727 S.W.2d 665, 666-67 (Tex. App.—Dallas 1987, no writ) (holding that judgment may be collaterally attacked by one who was not party to but who has substantial interest in subject matter of judgment (citing *Dean v. First Nat'l Bank of Athens*, 494 S.W.2d 222, 226 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.))). She seeks to avoid the prior judgments' effect in the administrative refund proceedings. The Assignees also assert that the Comptroller does not have a justiciable interest in challenging the trial courts' jurisdiction to appoint individual counsel. But as discussed below, the Comptroller has an interest in defending her authority to deny a claim on the ground that the person who filed the claim does not satisfy the statutory prerequisites for filing. Furthermore, this controversy will be resolved by the relief she sought at the trial court and continues to seek here—a ruling that the trial courts' appointment orders are void. Thus, a justiciable controversy exists between the parties, and the Comptroller has standing to collaterally attack the prior judgments in this lawsuit. *See Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).

The Assignees also argue that the Comptroller has no standing under the tax code to

13

*Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied). Only a void judgment may be collaterally attacked. *Browning*, 165 S.W.3d at 346. The judgment of a court of general jurisdiction is void only when it is apparent that the court had (1) no personal jurisdiction over a party or his property, (2) no jurisdiction over the subject matter, (3) no jurisdiction to enter the particular judgment, or (4) no capacity to act as a court. *Sierra Club*, 495 S.W.2d at 881-82. A judgment is also subject to collateral attack for "fundamental error," which occurs when "'the record shows the court lacked jurisdiction or the public interest is directly or adversely affected as that interest is declared in the statutes or the Constitution of Texas.'" *Wagner*, 315 S.W.3d at 192 (quoting *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982)).

The Assignees assert in one issue that the trial court erred by sustaining the Comptroller's plea to the jurisdiction because the plea was an improper collateral attack on the trial courts' orders that established settlement-class counsel's duties, including the pursuit of the Assignees' individual administrative claims. The Assignees make three arguments to support their contention that the trial courts had jurisdiction to enter the appointment orders. First, they argue that

challenge the appointment of counsel because the code does not authorize it. We disagree. The tax code empowers the Comptroller to collect taxes and to adopt rules for the enforcement of the code and the collection of taxes under the code. *See* Tex. Tax Code Ann. § 111.002 (West 2008). The tax code also empowers the Comptroller to determine whether a tax refund is due when a claim is filed. *Id.* § 111.104 (West 2008). It is within the Comptroller's statutory authority to deny a claim on the ground that the person who filed the claim with her office does not satisfy the statutory definition of a person who may file a claim. *See id.* § 111.104(b). This exercise of the Comptroller's statutory authority and the Comptroller's decision to collaterally attack the trial courts' orders as void as part of her exercise of that authority do not violate the separation-of-powers doctrine, as Assignees further contend. The Comptroller's challenge in this lawsuit of the trial courts' orders in another lawsuit in no way interferes with the judicial process. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001).

14

the trial courts (1) had jurisdiction over the *subject matter* because of our decision in *Levy* and (2) had jurisdiction to enter *the particular orders* because they have implied authority under Texas Rule of Civil Procedure 42 to define the scope of class counsel's duties to accomplish the purposes of class actions.  Second, the Assignees argue that there was no fundamental error in the appointment orders.  Third, they argue that the appointment orders resolved a justiciable controversy because the putative classes were adverse to the Retailers until the settlements were approved.

**Jurisdiction over the subject matter**

The Assignees contend that in the *Levy* decision this Court resolved the issue of whether the trial courts had jurisdiction over the subject matter by concluding that those courts had jurisdiction to consider the putative classes' claims against the Retailers for assignment of refund rights.  *See Levy*, 228 S.W.3d at 851-52.  The Comptroller agrees that this is the Court's holding in *Levy*.  But the Comptroller asserts that the trial courts' subject-matter jurisdiction to consider the limited issue of a putative class's claim for injunctive relief in the form of an assignment cannot be extended to include jurisdiction to appoint individual counsel for hundreds of thousands of absent potential claimants in separate and independent actions before the Comptroller for a tax refund.  *See id.* at 849 (noting that appellants did not appeal Comptroller's dismissal from suit).

Subject-matter jurisdiction refers to a court's power to hear a particular type of suit.  *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (distinguishing between subject-matter jurisdiction as court's power to hear particular type of suit and personal jurisdiction as court's power to bind particular person or party); *see also Perry v. Del Rio*, 53 S.W.3d 818, 824 (Tex. App.—Austin 2001) ("Subject-matter jurisdiction refers to the kinds of controversies a court has

authority to hear, as determined by the constitution, jurisdictional statutes, and the pleadings."), *dism'd as moot*, 66 S.W.3d 239 (Tex. 2001). It is clear from our previous decision in *Levy* that the trial courts had the power to hear the Retailer Suits and consider the putative classes' claims for injunctive relief in the form of assignments. Thus, the central question here is whether the trial courts had jurisdiction to enter the particular orders in those Retailer Suits appointing class counsel to act as individual counsel for absent class members in separate administrative proceedings.[8]

**Jurisdiction to enter the particular orders**

### *A court derives its power to enter particular orders from both express grants of jurisdiction and its inherent and implied powers*

A challenge to a court's jurisdiction to enter a particular order "strikes at the very power of the court to render the judgment." *Sierra Club*, 495 S.W.2d at 882. The Texas Constitution vests the judicial power of this State "in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of

---

[8] We note that the parties have also raised the issue of whether the appointment orders resolved a justiciable controversy between the putative classes and the Retailers. We recognize that this issue also implicates the trial courts' subject-matter jurisdiction because it is related to standing, which is a necessary component of subject-matter jurisdiction. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995). The standing doctrine identifies those suits that are appropriately resolved through the judicial process. *Todd*, 53 S.W.3d at 305 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990)). "Standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and 'a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought.'" *Id.* (quoting *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995)). We need not reach the issue of whether the putative classes' standing to seek assignments in the Retailer Suits translates into standing for the putative classes to seek the appointment orders because we ultimately conclude that the dispositive issue in this case is the trial courts' lack of jurisdiction to enter the particular orders. *See* Tex. R. Civ. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

16

Justices of the Peace, and in such other courts as may be provided by law." Tex. Const. art. V, § 1. Express grants of jurisdiction in the constitution and statutes apportion the judicial power among these various courts. *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). Thus, a particular court's jurisdiction is the portion of judicial power that it has been expressly authorized to exercise by the constitution or statutes. *Id.*

In addition to the express grants of judicial power to each court, courts also have implied and inherent powers. *Id.* A court's inherent judicial powers originate from the duties and responsibilities that the constitution has created and delegated to the court—they are administrative powers, not jurisdictional powers. *Id.* at 398-99 (explaining that inherent powers are those upon which court may call "to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"); *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (explaining inherent powers are administrative, not jurisdictional); *see also Thomas v. Anderson*, 861 S.W.2d 58, 61 (Tex. App.—El Paso 1993, no writ) (declining to recognize inherent power to appoint counsel in any situation "not authorized by statute or by the rules of procedure"). Implied powers do not have an independent basis like inherent powers do. Instead, they are powers "which can and ought to be implied from an express grant of power." *Eichelberger*, 582 S.W.2d at 399-400 (holding that supreme court's express jurisdiction to resolve questions of law arising in cases decided by intermediate appellate courts gave it implied jurisdiction to correct intermediate appellate court's decision that was contrary to decision of United States Supreme Court).

Texas district courts are courts of general jurisdiction. *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000). A district court's jurisdiction "consists of exclusive, appellate, and

original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, and original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8; *see also* Tex. Gov't Code Ann. § 24.007 (West Supp. 2011) (granting jurisdiction to district courts as provided in article V, section 8 of Texas Constitution). A district court may hear any case "that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity." Tex. Gov't Code Ann. § 24.008 (West 2004). Courts of general jurisdiction are presumed to have subject-matter jurisdiction unless a showing can be made to the contrary. *Dubai*, 12 S.W.3d at 75. In this case, the parties agree that the trial courts in the Retailer Suits had subject-matter jurisdiction over the putative classes' claims seeking to compel assignments of the Retailers' rights to request sales-tax refunds, *see Levy*, 228 S.W.3d at 852, but they disagree about the extent of the trial courts' power that can be implied from the express authority granted to the courts by Rule 42 to administer class actions, *see* Tex. R. Civ. P. 42.

### *The Texas Supreme Court has full rulemaking power over civil procedure*

The legislature has vested the Texas Supreme Court with full and exclusive rulemaking authority over the practice and procedure of civil actions. *See* Tex. Const. art. V, § 31(b) (establishing supreme court's responsibility for promulgating rules of civil procedure); *see also* Tex. Gov't Code Ann. § 22.004 (West Supp. 2012) (outlining supreme court's rulemaking power over civil procedure). Under that authority, the supreme court has adopted the Texas Rules of Civil Procedure, which have the same force and effect as statutes. *See* Tex. R. Civ. P. 2, 814; *see also In re City of Georgetown*, 53 S.W.3d 328, 332 (Tex. 2001) ("In 1939, when the Legislature by

18

statute 'confer[red] upon and relinquish[ed]' to this Court full rule-making power, it thereby acknowledged our authority to make the law governing civil procedure and evidence." (alteration in original) (footnotes omitted)). Texas Rule of Civil Procedure 42, as adopted by the supreme court, establishes the circumstances under which a trial court may allow a case to be pursued as a class action and may appoint class counsel to represent the class's interest. *See* Tex. R. Civ. P. 42. "There is no right to litigate a claim as a class action." *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 439 (Tex. 2000). A class action is merely a procedural device, and it may "not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action." Tex. R. Civ. P. 815; *see also* Tex. Gov't Code Ann. § 22.004(a); *Bernal*, 22 S.W.3d at 437.

In general, a litigant has a right to be represented by the attorney of his choice or to represent himself. *See* Tex. R. Civ. P. 7 ("Any party to a suit may appear and prosecute or defend his rights therein, either in person or by an attorney of the court."); *see also Ayres v. Canales*, 790 S.W.2d 554, 557 (Tex. 1990); *In re El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 146, 152 (Tex. App.—El Paso 2005, pet. dism'd). Trial courts do not have either an express general power or an inherent power to appoint counsel for a litigant. *See Thomas*, 861 S.W.2d at 60-61. Thus, a court may not appoint counsel in the absence of statutory or procedural authorization. *See id.* at 61.

Trial courts are statutorily authorized to appoint counsel in civil cases in very limited situations. *Id.* at 60; *see also In re El Paso Healthcare*, 225 S.W.3d at 154. For example, trial courts may appoint counsel to represent indigent parties in some circumstances when the party seeks representation. *See* Tex. Gov't Code Ann. §§ 26.049 (West 2004) (establishing county judge's power to appoint counsel), 24.016 (West 2004) (establishing district judge's power to appoint

19

counsel). Trial courts must appoint counsel for indigent or unavailable parents when a governmental entity seeks to terminate the parent-child relationship. Tex. Fam. Code Ann. § 107.013(a) (West Supp. 2012) (providing court must appoint counsel to represent indigent parent opposing termination of parent-child relationship). Other limited situations exist in which trial courts are statutorily authorized to appoint counsel to represent parties who are children or otherwise incapacitated. *See* Tex. Fam. Code Ann. §§ 51.10 (West 2008) (establishing power to appoint counsel in juvenile-delinquency cases), 107.010 (West 2008) (establishing power to appoint attorney ad litem for incapacitated person), 107.012 (West 2008) (providing court must appoint attorney ad litem to represent interests of child who is subject matter of suit in suit filed by governmental entity requesting termination of parent-child relationship or to be named conservator of child); Tex. Health & Safety Code Ann. § 574.003 (West 2010) (providing court must appoint attorney for proposed patient after application for court-ordered mental health services is filed).

In all these situations, the law provides for appointment of counsel because a party is indigent or otherwise unable to adequately represent his or her own interests. As we will discuss in more detail below, the law similarly provides for appointment of class counsel to represent the *class* interest in situations in which the trial court has made the procedural determination that the lawsuit should be certified as a class action. In other words, but for the supreme court's procedural grant of authority to the trial courts to use the class action as a procedural device in certain circumstances, the trial courts would not have had the power to appoint counsel in the Retailer Suits. In this case, the Assignees' only asserted basis for the trial courts' power to appoint class counsel to represent individual class members' interests in separate individual claim proceedings before the

20

Comptroller is the authority granted to the trial courts under Rule 42 to administer class actions and appoint class counsel. We will consider the Assignees' contention that the power to appoint class counsel to represent the individual Assignees in refund-claim proceedings before the Comptroller may be implied from the express procedural authority granted by the supreme court to appoint class counsel in class actions.

### The Assignees contend that the trial courts' power to enter the appointment orders may be implied from Rule 42

As a preliminary matter, we address the Assignees' contention that the supreme court's decisions in *Dubai* and *In re United Services Automobile Ass'n* require us to conclude that the trial courts had jurisdiction to enter the particular orders. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 309 (Tex. 2010); *Dubai*, 12 S.W.3d at 76. The Assignees assert that the effect of these decisions is that the Comptroller must show affirmative legislative intent to make the trial courts' power to determine the scope of class counsel's duties under Rule 42 a jurisdictional matter. But the holding of those cases is that a *statutory prerequisite* to suit is not jurisdictional unless the statute's language shows clear legislative intent to treat the restriction as jurisdictional. *USAA*, 307 S.W.3d at 306-07 (explaining difference between mandatory, but not jurisdictional, statutory requirements and requirements that are both mandatory and jurisdictional); *Dubai*, 12 S.W.3d at 76-77 (distinguishing between statutory prerequisites that establish party's right to go forward with suit under wrongful-death statute for death in foreign state or country and trial court's subject-matter jurisdiction over wrongful-death claim). Contrary to the Assignees' assertion, the supreme court did not hold in *Dubai* and *USAA* that clear legislative intent to make an issue jurisdictional must

21

be shown before a party can challenge a trial court's power to decide the issue. In addition, the question here is not whether the Assignees failed to establish a prerequisite to suit in the Retailer Suits and whether that failure should be considered jurisdictional; the question is whether trial courts have implied power under Rule 42 to grant settlement-class counsel the authority to represent individual absent class members in their individual refund proceedings before the Comptroller. *See Dubai*, 12 S.W.3d at 76-77 (explaining that plaintiff's right to maintain suit by satisfying statutory prerequisites relates to plaintiff's right to relief, not to court's jurisdiction to provide requested relief). Consequently, we need not determine whether the legislature affirmatively intended to make this issue jurisdictional. Instead, we must determine the parameters of the trial court's power to appoint counsel under Rule 42.

The Assignees contend that the trial courts had jurisdiction to enter the appointment orders because they have implied authority under Texas Rule of Civil Procedure 42 to define the scope of class counsel's duties to accomplish the purposes of class actions. The Assignees focus on the language of Rule 42 that gives trial courts the power to appoint class counsel to represent the interests of the class and to make orders in connection with that appointment. In particular, the Assignees base their argument that Rule 42 allows trial courts to define the duties of class counsel on the rule's provisions that (1) class counsel must fairly and adequately represent the interests of the class and (2) a court certifying a class may make further orders in connection with its appointment of class counsel. *See* Tex. R. Civ. P. 42(g)(1)(B), (C)(iv). They argue that from this language we can imply that the trial courts have jurisdiction to define the scope of class counsel's duties to include representing hundreds of thousands of absent individual class members in individual

22

refund proceedings outside the original class actions. They also assert that the courts' jurisdiction must encompass this implicit judicial power to accomplish the judicial-economy purpose of class actions by preventing a burdensome multiplicity of suits and the possibility of inconsistent results. Finally, to further support their contention that we should imply judicial power to establish individual attorney-client relationships between class counsel and the members of the settlement classes, they rely on the fiduciary duties that all class counsel owe to their clients to establish that attorneys for a class have an existing attorney-client relationship with each *individual member* of that class. We will address each of these arguments in turn.

### *Rule 42's plain language allows trial courts to appoint class counsel only for the purpose of representing the class's interest*

We begin by examining the language of Rule 42. When construing rules of civil procedure, we apply the same rules of construction that we use when interpreting statutes. *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007). Our primary objective is to give effect to the drafter's intent, which we discern from the plain and common meaning of the rule's words. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (addressing statutory construction). If the rule's language is unambiguous, we must interpret it according to its plain meaning, giving meaning to the language consistent with other provisions in the rule. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439, 441 (Tex. 2011) (addressing statutory construction). We typically give undefined terms in a statute their ordinary meaning, but we will apply a different or more precise definition, if one is apparent from the term's use in context. *Id.* We will not give an undefined term a meaning that is inconsistent or not in harmony with other provisions in the rule.

23

*See McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We presume that the legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *TGS-NOPEC*, 340 S.W.3d at 439. We may consider other factors in ascertaining the intent behind a rule, including the rule's objective and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023(1), (5) (West 2005) (establishing statutory-construction aids); *see also Shumake*, 199 S.W.3d at 284.

Rule 42's plain language establishes that "[a]n order certifying a class action *must define the class and the class claims*, issues, or defenses, and must appoint *class* counsel under Rule 42(g)."[9] Tex. R. Civ. P. 42(c)(1)(B) (emphasis added). Rule 42(g) reiterates that a court certifying a class "must appoint *class* counsel" and further provides that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the *class*." Tex. R. Civ. P. 42(g)(1)(A) (emphasis added). The court certifying a class and "appointing *class* counsel . . . may make further orders in connection with the appointment" of class counsel. Tex. R. Civ. P. 42(g)(1)(C)(iv) (emphasis added). Rule 42 governs only class actions—not individual proceedings. Rule 42(g) governs only appointment of class counsel—not counsel for individual absent class members.

Under the rule, the appointment of class counsel only happens when a court enters a certification order defining the class and the class claims, issues, or defenses. *See* Tex. R. Civ. P.

---

[9] "Class" commonly means "[a] group of people . . . that have common characteristics or attributes," and as noted, Rule 42 further provides a mechanism by which the trial court must define the class and its claims if the court determines that certification of a case as a class action is appropriate. *Black's Law Dictionary* 284 (9th ed. 2009). By way of contrast, the term "individual" is commonly understood to mean "[o]f or relating to a single person or thing, as opposed to a group." *Id.* at 843.

42(c)(1)(B). In other words, when the court appoints class counsel, it appoints class counsel to serve the interests of the class, as that class and its claims, issues, or defenses are defined in the certification order. Thus, when read as a whole, the language of the rule expressly limits the class's interests to the interests defined in the certification order.

In this case, the trial courts certified settlement classes consisting of people who were Texas residents at the time they redeemed mail-in retailer rebates for taxable purchases from the Retailers during certain defined time periods. The only settlement order that defined the class claims identified the only unresolved common issue of law as the question of "whether an injunction should be issued requiring Retailers to refund sales tax to customers who have redeemed Retailer rebates" and found that the putative class also sought an injunction to require the Retailer to provide assignments to the class members so that the "members may seek refunds directly from the Comptroller." In addition, as noted earlier, the only class claim remaining in the Retailer Suits after this Court's opinion in *Levy* was the claim seeking to compel the Retailers to assign their rights to request refunds from the Comptroller. *Levy*, 228 S.W.3d at 852. And all the settlement agreements approved by the courts provided that the Retailers would execute assignments and deliver them to settlement-class counsel. All the orders note that the settlement classes were being conditionally certified for settlement purposes as Rule 42(b)(2) mandatory classes. As one trial court explained in its order, this meant that notice need not be given to the class members at the time of preliminary approval of the settlements because the primary relief sought in the lawsuit and provided in the settlement was *injunctive*, non-monetary relief.

The limited injunctive relief sought by the class here is the primary distinction between this case and the cases cited by the Assignees for the proposition that it is within the

25

courts' power to appoint counsel to represent class members in separate proceedings when that representation is in the best interest of the class. In all of those cases, the class claims were claims for monetary relief, not injunctive relief, meaning that class members received notice and an opportunity to opt out at the time of class certification.[10] In addition, all of those cases involved extraordinarily complex class claims and equally complex settlements.[11] Moreover, none of those cases involved pursuit of a different type of relief against a defendant who was not already a party to the class action. In *Allapattah Services, Inc. v. Exxon Corp.*, class counsel continued to represent the class members in a special claims process arranged by the court as part of the same case; the trial court linked the potential award of attorneys' fees to the success of the claims-administration process. 454 F. Supp. 2d 1185, 1189 (S.D. Fla. 2006) (explaining that trial court required completion

---

[10] *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1191 (S.D. Fla. 2006) (noting Exxon paid $1.075 billion into settlement fund); *LaSala v. E*Trade Secs., LLC*, No. 05 Civ. 5869(SAS), 2005 WL 2848853, at *1 (S.D.N.Y. Oct. 31, 2005) (explaining case arose from pending partial settlement between plaintiff investor class and issuer defendants in hundreds of coordinated securities actions known as *In re Initial Public Offering Securities Litigation* seeking recovery for securities fraud); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 92 (2d Cir. 2003) (explaining appeal arose from creation of multi-billion dollar fund created to compensate Holocaust victims for conversion of assets); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 167, 169 (S.D.N.Y. 2000) (explaining class representatives sought approval of proposed partial settlement creating multi-million dollar fund); *see also* Fed. R. Civ. P. 23(c)(2)(B) (requiring notice and opt-out option for Rule 23(b)(3) class at time of certification).

[11] *See Allapattah Servs.*, 454 F. Supp. 2d at 1189 (noting complexity of class action resulting in two trials, extensive appeals, hotly contested claims administration process, and settlement providing 92% of class members with full compensatory damages); *LaSala*, 2005 WL 2848853, at *1 (partial settlement of IPO litigation cases, which included assignment of issuer defendants' claims against underwriter defendants to plaintiffs); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d at 93-96 (discussing settlement of consolidated cases against various Austrian and German banks involving assignment of Austrian banks' claims against German banks and subsequent complications and possible conflict of interest arising from proposed dismissal of case against German banks); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 170 (explaining claims process to be supervised by claims committee appointed by court).

of claims process before payment of attorneys' fees to align interest of class counsel with potential class members instead of leaving burden of finding class members to third-party claims administrator). In the rest of the cases, the assigned claims were assigned to the class for pursuit by the class, not its individual members, and the assigned claims were claims against non-settling defendants assigned to the class by the settling defendants. *See LaSala v. E\*Trade Secs., LLC*, No. 05 Civ. 5869(SAS), 2005 WL 2848853, at \*1 (S.D.N.Y. Oct. 31, 2005) (explaining that assigned claims would ultimately be pursued by Litigation Trustee on behalf of class if settlement was approved); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 93 (2d Cir. 2003) (discussing settlement involving assignment of claims to class, not individual class members); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 171 (S.D.N.Y. 2000) (explaining Austrian banks' claims against other banks were assigned to class as part of class settlement). These cases do not support the Assignees' contention that Rule 42 impliedly empowers trial courts to establish an individual attorney-client relationship between class counsel and absent class members to allow class counsel to pursue individuals' claims in separate, non-class proceedings.

We cannot conclude from Rule 42's express grant of power to appoint class counsel that the trial courts had the implied authority to appoint class counsel to act as individual counsel to individual class members in separate actions outside the class actions suing a different defendant and seeking a different type of relief. The plain language of Rule 42 limits the relief that the trial courts could provide to the settlement classes to the confines of their class claim for assignments. "When a statute clearly limits the relief which may be given in a particular situation, a judgment which attempts to give relief other than that authorized is void. . . . [And] [t]he effect of the Texas Rules

27

of Civil Procedure is similar."[12]  Gus M. Hodges, *Collateral Attacks on Judgments*, 41 Tex. L. Rev. 499, 515-17 (1963) (collecting cases).  Accordingly, we conclude that the plain language of Rule 42 does not support an implied power to enter the appointment orders.

### The power Assignees seek to imply does not further Rule 42's purpose

We are not persuaded by the Assignees' argument that the trial court's express power to administer class actions gives it the implied power to appoint class counsel to act as individual counsel as a means of furthering the judicial-economy purpose of class actions.  First, if settlement-class counsel truly represents the hundreds of thousands of individuals on an individual (not class) basis, it is unclear how this process avoids the possibility of an "inefficient and burdensome multiplicity of suits" or serves judicial economy.  Moreover, the Assignees' argument highlights the inherent contradiction in their position.  They concede that "the Tax Code does not allow administrative class refund claims."  But at the same time, they are requesting that the Comptroller write three checks that aggregate the refund amounts owed to the Assignees for later distribution to these individuals—a process that conspicuously mimics class-action procedure, particularly in light of the provisions in the settlement agreements providing that class counsel will seek court approval to have attorney's fees deducted from the total amounts obtained from the Comptroller.  In addition, their rationale for the trial courts' purported jurisdiction to appoint settlement-class counsel as individual counsel to the Assignees depends on asserted benefits to the classes, but the classes are

---

[12]  For example, an order requiring a party to produce documents in discovery that could not be the subject of discovery under the applicable civil-procedure rule is void.  Gus M. Hodges, *Collateral Attacks on Judgments*, 41 Tex. L. Rev. 499, 517 (1963) (analyzing cases in which various civil-procedure rules limited available relief).

28

settlement-only classes that were approved for the sole limited purpose of obtaining assignments of the refund claims from the Retailers for the class members. The assignments are the only thing that the class members need to file their own claims with the Comptroller. Their ability to pursue their individual refunds is not enhanced by appointment of an attorney (without their knowledge or consent) to represent their individual interest before the Comptroller.

Judicial economy is not the only objective of class action; "[o]ne of the foremost objectives of Rule 42 is to protect the interests of absent class members." *General Motors Corp. v. Bloyed*, 916 S.W. 949, 953 (Tex. 1996) (noting that "class actions are extraordinary proceedings with extraordinary potential for abuse"). Whatever the putative classes' original or ultimate goal may have been, the only claim resolved by the preliminary settlement approval orders was the claim for assignments from the Retailers. We will not imply judicial power to appoint class counsel to act as individual counsel in individual proceedings to extend the reach of a limited-purpose class action beyond the certified class claims, especially when the parties agree that the tax code does not allow class actions for sales-tax refund claims.

### *Counsel's fiduciary duties to the class do not support an implied power to appoint counsel to represent individual class members in other individual proceedings*

Nor are we persuaded that the existence of an attorney-client relationship between class counsel and absent class members gives rise to an implied power for trial courts to establish individual attorney-client relationships between class counsel and the absent individuals. The existence of fiduciary duties alone does not mean that the same type of relationship exists between class counsel and their class clients as exists between attorneys and individuals in non-class actions.

29

There are important differences between the two, not least of which is the differing responsibility for client communications. Rule 42 governs class counsel's communications with absent class members in a class action, which often does not occur until near the conclusion of the case. *See* Tex. R. Civ. P. 42(c)(2)(A) (governing notice to class certified under Rule 42(b)(1) or (2)); Tex. R. Civ. P. 42(e)(1)(B) (governing notice of material terms of proposed settlement). Communications with individual clients, on the other hand, are governed solely by Texas Disciplinary Rule of Professional Conduct Rule 1.03. Rule 1.03 requires an attorney to "keep a client reasonably informed about the status of a matter and promptly comply with requests for information." Tex. Disciplinary Rules Prof'l Conduct R. 1.03(a). It also requires an attorney to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Tex. Disciplinary Rules Prof'l Conduct R. 1.03(b). Given these differences, we decline to imply that the trial courts have power to appoint class counsel to represent individual class members by filing individual claims for them seeking a different type of relief when the individuals have been provided no notice of their attorney-client relationship and no opportunity to make informed decisions about their representation. We conclude that the jurisdiction to enter the particular orders at issue may not be implied from Rule 42 because the rule's express language contemplates only class representation, and neither the judicial-economy purpose of class actions nor the fiduciary duties owed by class counsel to the class support an implication of any additional power.

We hold that the trial courts in the Retailer Suits lacked jurisdiction to appoint settlement-class counsel to represent the individual Assignees in the presentation of their individual

30

refund claims to the Comptroller.[13]  Thus, those portions of the settlement orders purporting to appoint settlement-class counsel as counsel for the individuals are void.  As a result, the Assignees did not properly exhaust their administrative remedies because settlement-class counsel lacked authority to file individual refund claims on their behalf.  The lack of exhaustion of administrative remedies means that the Assignees have not satisfied the statutory requirements for waiving sovereign immunity in a tax-refund suit.  We overrule the Assignees' issue on appeal.

## CONCLUSION

Having determined that the trial court did not err by granting the Comptroller's plea to the jurisdiction, we affirm the judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed on Motion for Rehearing

Filed:  February 22, 2013

---

[13] Because we have concluded that the trial courts had no jurisdiction to enter the appointment orders and thus the orders are void, we need not reach the Assignees' remaining argument that the orders did not constitute fundamental error. *See* Tex. R. Civ. P. 47.1 (court of appeals must hand down written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

31