**Motion for Rehearing Granted; Memorandum Opinion filed February 28, 2023 Withdrawn; Judgment filed February 28, 2023 Vacated; and Opinion on Rehearing filed January 18, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00482-CV

---

### CITY OF HOUSTON, Appellant

### V.

### JONATHAN GONZALES, Appellee

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2016-42378**

---

### OPINION ON REHEARING

We issued our original opinion in this case on February 28, 2023. Appellee Jonathan Gonzales filed a motion for rehearing. We grant his motion for rehearing, withdraw our previous opinion, vacate our previous judgment and issue this opinion and judgment.

After a bench trial, the trial court awarded appellee Jonathan Gonzales

damages on his negligence claim against appellant City of Houston arising out of a traffic accident between Gonzales and a peace officer employed by the City. On appeal, the City argues the trial court erred by not dismissing Gonzales's claims for want of jurisdiction because the peace officer was responding to an emergency call or emergency situation, and the officer did not exhibit conscious indifference or reckless disregard for the safety of others. *See* Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

We conclude that the trial court did not err in denying the City's plea to the jurisdiction because Gonzales met his burden to produce evidence negating the applicability of the emergency exception of the Texas Tort Claims Act. However, we agree with the City that the trial court erred by awarding Gonzales relief in excess of the aggregate relief permitted by Texas Rule of Civil Procedure 169. Therefore, we affirm the judgment of the trial court in part, reverse in part, and render judgment awarding Gonzales the sum of $100,000 as permitted by Texas Rule of Civil Procedure 169.

## I. BACKGROUND

Houston Police Department (HPD) probationary peace officer Daniel Iwai was driving south on the feeder road of Beltway 8 in the far-right lane one January night in 2016.[1] He was driving an HPD vehicle with his training officer, Kamesha Baker, in the passenger seat when he received a priority-two call for assistance with a suspicious vehicle. Iwai began heading towards the location of the call although he did not activate his light or sirens. Testimony at trial established that the HPD standard procedure for response to a priority-two call is without

---

[1] The term probationary officer refers to a peace officer still undergoing field training. Iwai has since successfully completed his training and was employed with the City of Houston at the time of trial.

emergency equipment, i.e., no lights or sirens, although the officer has discretion to employ emergency equipment if warranted by the situation and after notifying their dispatch.[2]

While they were in transit, Iwai and Baker testified that another vehicle pulled into their lane of travel leaving Iwai with little time to avoid a collision. Iwai applied his brakes and swerved his vehicle to the right into the driveway of a shopping center. At the time Iwai swerved into the driveway, Gonzales was in his vehicle in the same driveway waiting to exit the driveway onto the feeder road. The vehicle driven by Iwai struck the rear bumper of Gonzales's vehicle on the driver's side. The officer who investigated the accident determined the collision was caused by a third vehicle making an unsafe lane change. The record does not reflect that Iwai was cited or disciplined for the accident or his response.

To recover for injuries Gonzales alleges he received in the collision, Gonzales filed suit against the City in 2016. The case was tried to the bench in June 2021. The City argued at trial that the emergency exception applied to preclude the waiver of government immunity provided by the Texas Tort Claims Act (TTCA).[3] The trial court asked for briefing on the sudden-emergency exception, and the City filed a plea to the jurisdiction with responsive briefing after

---

[2] Evidence at trial established HPD has a response-time goal of five minutes for priority-two calls. Houston Police Department General Order 600-01 provides "[p]riority two calls for service represent in-progress property crimes and/or a potential threat to human welfare, and assume that if not in-progress, the event recently occurred or response to the scene is urgent." Although the Transportation Code generally requires audible or visual signals—lights and sirens—to be used in responding to an emergency call, peace officers may operate an authorized emergency vehicle without audible or visual signals if "complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department." Tex. Transp. Code Ann. § 546.004(c)(2); *see also* Tex. Transp. Code Ann. § 546.003 (audible or visual signals required "at the discretion of the operator in accordance with policies of the department or the local government that employs the operator").

[3] The City first asserted its plea to the jurisdiction at trial.

3

trial. In July 2021, the trial court rendered a final judgment in favor of Gonzales and awarded damages of $250,000. The City now appeals.

## II.  ANALYSIS

In issue 1, the City argues the trial court abused its discretion by not dismissing Gonzales's claims for want of jurisdiction because the City met its burden of establishing the application of the TTCA's emergency exception. Alternatively, the City argues in issue 2 that the sudden-emergency defense bars a finding of liability against the City, and in issue 3 that the trial court erred in allowing Gonzales to amend his pleadings on the eve of trial and increase his damages without following Texas Rule of Civil Procedure 169. We begin with the jurisdictional question and consider whether governmental immunity was waived for Gonzales's claim.

### A.  Standard of review

Subject-matter jurisdiction is necessary to a court's authority to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plaintiff must allege facts affirmatively showing the trial court has subject-matter jurisdiction. *Id.* at 446. Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224–25 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Texas Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

### B.  Governmental immunity

Sovereign and governmental immunity are common-law concepts that generally protect the State and its political subdivisions from the burdens of litigation. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign

4

immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011) (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

Governmental immunity has two components: "immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). When a governmental defendant challenges jurisdiction on grounds of immunity from suit, the plaintiff has the burden to "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Immunity is waived only by clear and unambiguous language. *See* Code Construction Act, Tex. Gov't Code Ann. § 311.034 ("[A] statute shall not be construed as a waiver of [] immunity unless the waiver is effected by clear and unambiguous language.").[4]

## C.     Texas Tort Claims Act

The TTCA provides a limited waiver of immunity for tort suits against

---

[4] There is a long-standing principle in Texas law that a distinction exists between municipalities and other governmental units for governmental-immunity purposes. *See City of Galveston v. Posnainsky*, 62 Tex. 118, 126 (1884) ("Counties . . . are created by the legislature by general laws without reference to the wish of their inhabitants, and thus for essentially public purposes" whereas cities are incorporated through special charters and are "enacted at the request of those who are to be most directly benefited by them and with a view to this end."). Municipalities are an exception to the general rule of governmental immunity because a municipality is not immune for its proprietary functions. *See Tooke*, 197 S.W.3d at 343. There is no dispute between the parties that the operative facts of this lawsuit arise from the performance of a governmental function. TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(1); *see* Tex. Const., art. X11, § 13(a) (classification of municipal functions).

governmental units. TTCA, Tex. Civ. Prac. & Rem. Code § 101.021; *see Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000). Under the section of the TTCA relevant here, a governmental entity may be liable for the torts of its employee "acting within his scope of employment" arising from the operation or use of motor-driven vehicles or equipment if, among other things, the "employee would be personally liable to the claimant according to Texas law[.]" TTCA, Tex. Civ. Prac. & Rem. Code § 101.021(1). The parties do not dispute that Gonzales's claims arise from Iwai's use of a motor vehicle and that Iwai acted within the scope of his employment with the City at the time of the collision. Instead, the parties disagree whether the emergency exception to the waiver of governmental immunity applies.

The TTCA includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances under which the waiver of immunity does not apply. TTCA, Tex. Civ. Prac. & Rem. Code Ann. §§ 101.051–.067; *see City of San Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). One of the exceptions addresses actions undertaken as part of an emergency response. Under this exception to immunity, the TTCA does not apply to a claim based on a governmental employee's conduct if that employee, while responding to an emergency call or reacting to an emergency situation, acts in compliance with laws or ordinances applicable to the emergency actions or, absent such laws or ordinances, the employee's actions are not taken with conscious indifference to or reckless disregard for the safety of others. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2).

## D.    Applicability of the TTCA's emergency exception

Gonzales had the burden of negating the applicability of the emergency exception and affirmatively showing a waiver of immunity. *City of San Antonio v.*

*Maspero*, 640 S.W.3d 523, 529 (Tex. 2022). He had to present evidence establishing at least one of the following: (1) Iwai was not responding to an emergency call or reacting to an emergency situation; (2) Iwai's actions were not in compliance with the laws and ordinances applicable to emergency action; or (3) Iwai's actions reflected conscious indifference or reckless disregard for the safety of others. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2); *Maspero*, 640 S.W.3d at 529. Gonzales argues he presented evidence that Iwai was not responding to an emergency call and that Iwai's actions reflected reckless disregard for the safety of others.

### 1. Responding to an emergency call or situation

The TTCA does not define the terms "emergency call" or "emergency situation," but Texas courts have interpreted the term "emergency" broadly. *City of Houston v. Sauls*, 654 S.W.3d 772, 786 (Tex. App.—Houston [14th Dist.] 2022, pet. filed); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 WL 6788079, at *8 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op.); *see also Hartman*, 201 S.W.3d at 672–73 (city's reaction to widespread roadway flooding constituted reaction to "an emergency situation"); *Quested v. City of Houston*, 440 S.W.3d 275, 284–85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (officer not in uniform, driving personal vehicle was responding to emergency call of hostage situation ); *Jefferson Cnty. v. Hudson*, No. 09-11-00168-CV, 2011 WL 3925724, at *3 (Tex. App.—Beaumont Aug. 25, 2011, no pet.) (mem. op) (responding or reacting to "unforeseen circumstances that call for immediate action"). The word "emergency" is defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Emergency*, Merriam-Webster.com,   https://www.merriam-webster.com/dictionary/emergency (last visited January 4, 2024); *see also* Code Construction Act, Tex. Gov't Code

7

Ann. § 311.011 (words and phrases construed according to common usage).

The City argues the evidence at trial conclusively established that Iwai was responding to an emergency call or an emergency situation. The City presented evidence via Iwai's and Baker's testimony that Iwai and Baker were responding to a "priority two call for service," which is an emergency call based on HPD protocol, when Iwai was cut off by another vehicle that moved into his lane of travel. Iwai testified that the actions of the third vehicle presented the possibility of an imminent multi-vehicle collision.

HPD's crash questionnaire form, filled out by Iwai, also indicated that Iwai was responding to an emergency call for a suspicious vehicle. However, the Texas Peace Officer's Crash Report, filled out by an investigating officer not involved in the collision, does not reflect that Iwai's police vehicle was responding to an emergency. The crash report form has a specific box that can be checked to reflect whether one or more of the vehicles were police, fire, or EMS on emergency. In his trial testimony, the investigating officer explained that he did not indicate that Iwai and Baker were responding to an emergency call because their vehicle did not have its lights and sirens activated. The narrative section of the report does not reference that Iwai was responding to an emergency call.

The City argues that the mere fact the crash report did not indicate that Iwai was responding to an emergency does not create an issue of fact. First, the City refers to testimony from the investigating officer, who said that the lack of lights and sirens did not determine whether Iwai was responding to an emergency. The investigating officer also testified that HPD fills out the crash report differently from the Texas Department of Transportation (DPS), even though the crash report was a DPS form and that DPS promulgates the instructions to the form. Nevertheless, the crash report is one of two contemporaneous documents that

addressed whether Iwai was responding to an emergency, and as this court is not the fact-finder, we cannot simply disregard evidence that the trial court could have credited, based on testimony given five years after the document was created.

The evidence here does not conclusively establish one way or another whether Iwai was responding to an emergency call or situation at the time of the accident. Given the conflicting evidence, it was the role of the fact-finder to determine whether Gonzales met his burden to produce evidence that Iwai *was not* responding to an emergency call or situation[5] at the time of the accident. After receiving all the evidence and briefing from both parties, the trial court rendered judgment for Gonzales, impliedly finding that Iwai was not responding to an emergency call. The evidence is legally and not factually insufficient to support that implied finding.

### 2. Reacting to an emergency situation

The City's arguments also raise the question of whether Iwai's reaction to an impending car accident was an alternate justification for the application of the emergency exception. In our original opinion, we concluded that Iwai's response to an impending traffic accident constituted a response to an emergency situation. However, we are persuaded by Gonzales's arguments on rehearing and conclude that traffic accidents that do not involve a vehicle operating as an authorized emergency vehicle pursuant to Transportation Code section 541 cannot constitute an emergency situation as contemplated by the TTCA. *See* Tex. Transp. Code Ann. § 541.201 (defines "authorized emergency vehicle); *see also* Tex. Transp. Code

---

[5] To the extent the City argues that the call for assistance with a suspicious vehicle, that ultimately escalated into a potential aggravated assault with a deadly weapon, to which Iwai was enroute to assist with was an emergency situation, the analysis is the same. The DPS crash report, discussed above, provides evidence that refutes the applicability of the emergency exception.

Ann. §§ 546.001–.052.

Other Texas courts have considered the scope of "emergency situations" under the TTCA. Most often the emergency exception is applied to traffic accidents involving emergency vehicles but is not limited to only those circumstances. *See, e.g., Hartman*, 201 S.W.3d at 672–73 (applying emergency exception to widespread roadway flooding); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410–11 (Tex. App.—Fort Worth 2006, pet. denied) (emergency situation arose when suspect in back of patrol car tried to escape through car window); *City of Arlington v. Whitaker*, 977 S.W.2d 742, 745 (Tex. App.—Fort Worth 1998, pet. denied) (fire chief parked vehicle in roadway to protect other vehicles from flooded roadway); *see also Harris Cnty. v. Spears*, No. 14-17-00662-CV, 2018 WL 4571841, at *4 (Tex. App.—Houston [14th Dist.] Sept. 25, 2018, no pet.) (mem. op.) (holding that claims "arising from the operation of a patrol vehicle in response to an emergency fall within the scope of section 101.055(2)" and that evidence officer was responding to "a Medical Emergency [or] possible suicide" call that required officer's "immediate presence" and that he "reach the scene as quickly as he could" was sufficient to show he was responding to emergency). But we have found no other Texas court that has held a traffic accident with a government vehicle, not acting as an authorized emergency vehicle, was encompassed within the meaning of the statute. Given that the TTCA specifically waives immunity for traffic accidents with government vehicles,[6] interpretating the phrase "reacting to an emergency situation" would seemingly allow the exception to swallow the waiver.

---

[6] "A governmental unit in the state is liable for . . . personal injury . . . proximately caused by . . . the negligence of an employee acting within his scope of employment if . . . [the] personal injury . . . arises from the operation or use of a motor-drive vehicle[.]" TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.021(a)(A).

We conclude that Gonzales met his burden of presenting evidence that Iwai was not responding to an emergency call or situation. Therefore, we hold the trial court did not err in relying on such evidence to deny the City's claim of immunity. Given this conclusion, we need not address whether Iwai's actions reflected reckless disregard for the safety of others.

We overrule issue 1.

### E.      Sudden-emergency defense

In addition to arguing that governmental immunity barred Gonzales's claim, the City also argued that the "sudden emergency" defense relieved Iwai of liability. The City asserts that if the sudden-emergency defense was conclusively proved then Iwai would not be personally liable to Gonzales; and immunity would not be waived. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1); *see DeLeon v. Pickens*, 933 S.W.2d 286, 293 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied) ("[T]he only purpose of the sudden emergency defense doctrine is to relieve a party from the consequences of his conduct which might otherwise be considered negligent."); *see also Benham v. Lynch*, No. 04-09-00606-CV, 2011 WL 381665, at *6 (Tex. App.—San Antonio Feb. 2, 2011, no pet.) (mem. op.) (defendant not liable to plaintiff for negligence if fact-finder found that sudden emergency resulted in defendant rear-ending plaintiff's car).

A "sudden emergency" exists when (1) an emergency situation arises suddenly and unexpectedly, (2) the emergency situation was not proximately caused by the negligent act or omission of the person whose conduct is under inquiry, and (3) after an emergency situation arose that to a reasonable person would have required immediate action without time for deliberation, the person acted as a person of ordinary prudence would have acted under the same or similar circumstances. *See Dillard v. Texas Elec. Coop.*, 157 S.W.3d 429, 432 n.4 (Tex.

2005); *Jordan v. Sava*, *Inc.*, 222 S.W.3d 840, 847 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The "sudden emergency" defense is an inferential rebuttal. *See Dillard*, 157 S.W.3d at 433–34. Inferential rebuttals are defensive theories that operate to rebut an essential element of a plaintiff's case by proof of other facts. *See Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."); *Gómez v. Cooke*, No. 14-15-00010-CV, 2016 WL 836781, at *2 (Tex. App.—Houston [14th Dist.] Mar. 3, 2016, no pet.) (mem. op.).

The City, as the party seeking application of the "sudden emergency" defense, bore the burden of producing sufficient evidence to prove its inferential-rebuttal defense. *See City of Houston v. McGriff*, No. 01-21-00487-CV, 2022 WL 17684046, at *11 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (summary-judgment context).

At trial, the DPS crash report reflects a contributing factor to the accident was the unsafe lane change of the unidentified, third vehicle that cut off Iwai. Nothing in the report reflected a determination that Iwai was "at fault" for the accident. Iwai and Baker both testified that the unidentified vehicle cut off their police vehicle forcing Iwai to take evasive action to avoid a more destructive accident. However, to the contrary, there was also testimony from Gonzales that Iwai simply could have braked to avoid a collision with the vehicle in front of him. Therefore, the trial court received conflicting evidence about Iwai's fault in causing the collision and could have credited Gonzales's testimony. Given this conflicting evidence, we cannot conclude that the trial court's rejection of the "sudden emergency" defense was in error.

We overrule issue 2.

## F.     Violation of Rule 169

In its third issue, the City argues that the trial court erred by granting leave for Gonzales to amend his pleadings on the eve of trial and increase his requested damages from $100,000 to $250,000.[7]

Texas Rule of Civil Procedure 169 establishes an "expedited actions process" that allows civil claimants to fast-track their claims. *See* Tex. R. Civ. P. 169; *Cross v. Wagner*, 497 S.W.3d 611, 612 (Tex. App.—El Paso 2016, no pet.). A claimant can invoke this process by affirmatively pleading that he seeks monetary relief aggregating $250,000 or less. Tex. R. Civ. P. 169(a)(1). Under this expedited process, limits are applied to discovery, continuances, challenges to experts, and time for presentation of evidence and argument at trial. Tex. R. Civ. P. 169(d); *Cross*, 497 S.W.3d at 612.

The discovery limitations are identified in Rule 190.2, and include a discovery period that begins when suit is filed and ends 180 days after the first request for discovery is served on a party; a total of six hours of oral depositions for each party; and no more than fifteen interrogatories, requests for production, and requests for admissions. Tex. R. Civ. P. 190.2(b); *see* Tex. R. Civ. P. 169(d)(1) ("Discovery is governed by Rule 190.2"). A court must remove a suit from the expedited-actions process on a motion and a showing of good cause by any party. Tex. R. Civ. P. 169(c)(1)(A).

Rule 169, at the time Gonzales filed suit, only allowed claimants to use the expedited procedure if they sought relief aggregating $100,000 or less. *See* Final Approval of Rules For Dismissals and Expedited Actions, Misc. Docket No. 13-9022, 76 Tex. B.J. 221, 223 (Tex. Feb. 12, 2013) (Former Rule 169). Although

---

[7] The TTCA also contains a statutory cap on recoverable damages. *See* TTCA, Tex. Civ. Prac. & Rem. Code Ann. § 101.023.

13

the rule was amended during the pendency of Gonzales's suit, the amended provisions increasing the amount in controversy limit in Rule 169 became effective for those cases filed on or after January 1, 2021. *See* Final Approval of Amendments to Texas Rules of Civil Procedure 47, 99, 169, 190, 192, 193, 194, 195, 196, 197, and 198, Misc. Docket No. 20-9153, 84 Tex. B.J. 148, 148 (Tex. Dec. 23, 2020).

To resolve the issue presented by the City, we must construe Rule 169. The interpretation of a procedural rule is a question of law that we determine de novo by applying the same canons of construction applicable to statutes. *Cross*, 497 S.W.3d at 613 (citing *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015)); *see also* Code Construction Act, Tex. Gov't Ann. §§ 311.002(4) (Act applies to each rule adopted under code); 22.004 (authorizing supreme court to promulgate rules of civil procedure). We apply the plain meaning to a rule's unambiguous language in a manner that is consistent with other provisions in the rule. *Cross*, 497 S.W.3d at 613 (citing *Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 864 (Tex. App.—Austin 2013, pet. denied)).

The expedited-actions process "is mandatory; any suit that falls within the definition of 169(a)(1) is subject to the provisions of the rule." Tex. R. Civ. P. 169, cmt. 2 (2013). Although Rule 169 does offer a procedure for removing a case from the expedited-actions process, Gonzales did not seek to remove his case from the expedited-actions process. He sought to increase his requested relief by amending his live pleadings with the trial court's approval. However, Gonzales based the increase in his requested relief on a version of the rule that did not apply to the case and only argued that the City would not be prejudiced because it had notice of his damages in discovery. Although the trial court granted Gonzales leave to amend, the provisions of Rule 169 were mandatory, and the trial court did not have

14

discretion to alter them. Rule 169, at the time Gonzales filed suit, specifically provided that "[i]n no event may a party who prosecutes a suit under this rule recover a judgment in excess of $100,000, excluding post-judgment interest." Former Tex. R. Civ. P. 169(b). Given the language of the rule, the trial court should have either denied Gonzales's request to amend or removed the case from the expedited-actions process using the procedures in the rule.

We conclude the trial court erred in disregarding the mandatory language of Rule 169 by awarding "damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees" in excess of $100,000. Former Tex. R. Civ. P. 169(a), (b) Therefore, we sustain issue 3.[8]

## III. CONCLUSION

Having overruled issues 1 and 2 and sustained issue 3, we reverse the judgment of the trial court, in part, and render the judgment the trial court should have rendered by awarding Gonzales the sum of $100,000, excluding post-judgment interest. Tex. R. App. P. 43.2(c); *see* Former Tex. R. Civ. P. 169(b).


/s/    Charles A. Spain
Justice


Panel consists of Justices Zimmerer, Spain, and Poissant.

---

[8] Although the trial court's final judgment includes an award to Gonzales of taxable court costs, the City did not challenge the award of costs on appeal.